## Compton, et al. v. Moore, et al.

(Decided January 11, 1916.)

### Appeal from Mercer Circuit Court.

1. Religious Societies—Limitation as to Land to be Held by—Section 319 Ky. Stats.—Under section 319 of the Kentucky Statutes, "No church or society of Christians" can take or hold title to, by devise or otherwise, in this State, exceeding fifty acres of ground, and that must be held "for the purpose of erecting thereon houses of public worship, public instruction, parsonage, or graveyard."

2. Religious Societies—Limitation as to Land to be Held by.—There is no limitation in such section upon the power of the person attempting to confer title upon such society, but only a limitation therein of the latter's capacity to take and hold title to land.

3. Religious Societies—Limitation as to Land to be Held by.—If the one attempting to confer title to such societies includes, in the instrument executed by him, evidencing such purpose, more than fifty acres of ground, the amount specified in the statute, only the excess above fifty acres is void, and the church or society will be permitted to take and hold the title for the purposes mentioned in the statute to as much as fifty acres of ground.

4. Religious Societies—Limitation as to Land to be Held by.—If the instrument creating and conferring the donation is silent as to the use and purpose for which the title may be held by such church or society, the law will impress upon its use, and limit the same, to the purposes stated in the statute, which will be read into and made a part of the instrument creating the donation.

5. Religious Societies—Limitation as to Land to be Held by.—The doctrine last mentioned above will not be applied, however, if in the instrument creating the donation, the maker thereof has expressed a different user of the property, and impressed upon it a different use than the ones specified in the statute.

6. Executors and Administrators—Authority to Extinguish Debts—Excess.—Where the executor was authorized by the will to rent out the land until sufficient funds were realized to extinguish debts, expenses, etc., and he realized in this way more than was necessary for this purpose, the excess will be property of the devisee of the land and does not become personalty belonging to the estate.

7. Religious Societies—Devise of Property to.—If a testator directs land to be sold and the proceeds paid to a church or a society of Christians, this is not prohibited by section 319 of the Kentucky statutes, as the proceeds of the land when sold became personalty, and there is no statutory inhibition against such church or society from taking and using personalty.

JAY W. HARLAN and E. V. PURYEAR for appellants.

B. F. ROACH and J. T. WILSON for appellees.

Opinion of the Court by Judge Thomas—Affirming.

In the early part of the year 1910, Rebecca Taylor Harlan departed this life, testate and domiciled at the time, in Mercer county, Kentucky. After her death, and on April 4, 1910, her will, which was holographic, together with the codicils, which had been executed in the same way, were each and all offered for probate before the county court of that county and were by proper orders probated as the last will and testament of the decedent. She did not leave any descendants, but as her only heirs, she left surviving her the appellants, J. W. Compton and Mrs. R. G. Maddox, who are the children of Betty Compton, a deceased sister of the decedent, and the appellees, Irene Moore, Bijou Moore, William Moore and Mead Moore, the children of another deceased sister, Mrs. B. Frank Moore. One clause of her will is in these words: "In the event of her (Irene Moore) marriage or death the income from said property is to be divided among my nephews, William Moore, Mead Moore, Harlan Moore. In case of her marriage she will share with them the income from aforesaid property. At the death of any one of these four heirs, the other three inherit the life interest until the last one. At the death of the last one of these four above named heirs, the property is to pass into the control of persons named by my above named heirs, for the use of the Protestant Episcopal church in Harrodsburg, Kentucky, to become absolutely the property of the Protestant church to be used for the benefit of this parish." Her real propery consisted of a house and lot in Harrodsburg and a farm of 310 acres in Boyle county. The appellants were not remembered in the will or any codicil thereof, and conceiving themselves aggrieved, filed this suit in the Mercer circuit court on May 25, 1911, claiming that the will and the codicils were each void and particularly the part thereof quoted above, for the reason that it attempted to devise to a church or a society of Christians, land in violation of section 319 of the Kentucky Statutes. The church, as well as the Moore heirs and the executor, were made defendants to that suit and filed demurrers to the petition, which were sustained and the petition dismissed, from which judgment an appeal was prosecuted to this court and the judgment was reversed in an opinion rendered December 19, 1913, (Compton v. Moore, 156 Ky., 544).

The reversal was had because if the provision was carried out as to the church it would be permitted to take and hold more land "for the purpose of erecting thereon houses of public worship, public instruction, parsonage or graveyard" than is permitted by the section of the statute, *supra*, which is as follows:

"No church or society of Christians shall be capable of taking or holding the title, legal or equitable, to exceeding fifty acres of ground; but may acquire and hold that quantity for the purpose of erecting thereon houses of public worship, public instruction, parsonage or graveyard."

As to whether the church could be permitted to take and hold, for the purposes stated, land up to the limit of fifty acres, was not decided in that opinion, but on the contrary, in the latter part thereof, an expression of opinion thereon was expressly withheld. Upon the filing of the mandate of this court the church filed an answer, counter-claim and cross-petition, in which it corrected the name by which it had been sued, and alleged that it was at the time the owner of a small lot of real estate in Harrodsburg upon which it had erected its church, using about 1/5 or 1/6 of an acre, and that this was all the land which it owned or held for any purpose in this Commonwealth, and it asked that a sufficient amount of the 310-acre farm, covered by the devise to it, not to exceed 50 acres in all, should be set apart and allowed to it when the contingency happened, upon which it could take possession (which would be after the death of the last life tenant), and which it would use only for the purposes contemplated by the statute, and expressing its willingness to so use such land for such purposes.

The second paragraph of the answer asserted the claim of the church to $250.00 from the proceeds of a sale of the house and lot in Harrodsburg should the devisee, Irene Moore, exercise the power of sale thereof, which power it was claimed she was given under the will.

The prayer was that the court adjudge to it enough of said land at the death of the life tenants for the uses stated, together with other lands which it might then hold, not exceeding fifty acres, and that it be adjudged the right to the $250.00 mentioned.

The defendant, Irene Moore, also filed an answer and cross-petition, in which she did not deny the claim of the

church as made in its pleading, and asks that it be ad-
judged that the first codicil of the will empower her to
sell the house and lot, used as a residence, by the de-
cedent in Harrodsburg, Kentucky.

Demurrers were filed to these pleadings by the ap-
pellants, and they were overruled and the relief sought
by the defendants was given by the judgment of the
court to them, and from that judgment the appellants
prosecute this second appeal.

The judgment also settled the accounts of the exe-
cutor in which it was adjudged that the balance of the
funds in his hands, after the payment of the debts, burial
expenses, etc., amounting to $1,524.24, be paid to the ap-
pellee, Irene Moore. The appellants complain of this
part of the judgment, as they claim that they were en-
titled to one-half thereof for reasons hereinafter to be
considered.

The questions to be determined upon this appeal are:
First: (a) Can the church, notwithstanding the limita-
tions as to its capacity to take and hold only fifty acres
of land, have adjudged to it this number of acres,
although the devise attempts to confer upon it a
larger number of acres? (b) If the preceding question
should be answered in the affirmative, can the church
take as much as fifty acres encumbered with the limita-
tions upon the use as prescribed by the statute, al-
though the testator did not impress in her will any such
use of the property? Second: Did the court correctly
order the balance in the hands of the executor paid to ap-
pellee, Irene Moore?

It may be stated generally that donations to churches
and church societies, whether by devise or otherwise,
partake more or less of the characteristics of the law
pertaining to charities. Modern experience teaches that
the various Christian societies of the country generally
appropriate and use such property to the betterment and
uplift of mankind, and whatever may have been the view
taken in the early history of the law in regard to such
donations, it may now be said that they are treated as
charitable donations and belong to that class. These
beneficences are favorites of the law, and the policy is
to give them effect if it can be done without serious vio-
lence to the settled rules of interpretation, whether as to
the instruments creating them, or as to the capacity of
the donee of the charity, or as to the statutes prescribing

limitations in reference thereto. In volume 6 Cyc., 949, we read:

"The courts always give effect to charitable gifts when that can be done consistently with the established rules of law; and, without forcing any rule of construction they resort, if necessary, to the most liberal rules the nature of the case admits of."

This is fortified by many authorities from a number of states, and indeed the rule, so far as we are able to ascertain is universal. This court, speaking through Judge Robertson, in the case of Cromie's Heirs v. Orphans' Home Society, etc., 3 Bush, 375, endorsing these views, says:

"But, with the restrictive interpretation thus indicated, charities in Kentucky, as well as in England and elsewhere, have long been, and yet are, peculiar favorites of modern jurisprudence. And, before the repeal of the statute of Elizabeth, this court said: 'Public charities are public blessings, and the Commonwealth is interested in giving force and effect to them. They redound to the interest of the Commonwealth, and good policy requires that the beneficent object of the founder should be carried out and enforced.'"

It will be noticed that there is no limitation, in the section of the statute under consideration, upon the power of the donor (testatrix in this case), but only a limitation upon the capacity of the donee (the church in this case), to *take* and *hold* real estate in this Commonwealth; and a limitation upon the use to which such church may make of such real estate.

The cardinal rule in the construction of wills is that the intention of the testator shall prevail. It is manifest in the instant case that the testatrix desired to confer upon the church the use of all her property upon the contingency named, and it would be an uncalled for, unfortified and strained construction, as it appears to us, that, inasmuch as she was prevented from doing this by the statute, of which she may have in fact been ignorant, to the extent which she desired, that she, therefore, failed to carry out her purpose in her will in toto and failed to give little because she desired to give much. It is a rule of logic that the greater includes the less, and if she could have given to this church, for the purposes stated, the amount of land prescribed by the statute, we do not perceive why her devise should be

.construed to be null and void, because she attempted to be more liberal than the law would allow, thus defeating all of her generous intentions towards this devisee. We are aware of the fact that in some jurisdictions it has been held that if the devise is void in part, it is void in its entirety, but there.is much authority to the contrary, which, we think, is not only more numerous than those first mentioned, but also more sound and logical.

In discussing this question, the author of Cyc, vol. 6, page 930, says: ''More frequently the limitation is as to the amount which charitable institutions may take and hold; and such a limitation is not violated by a gift which carries the total beyond it, but the title to the valid part of the gift only vests in the beneficiary and is void as to the excess; or, if delivered and accepted, and it is a trust that is not indivisible, it is subject to being divested as to the excess.'' The text is fortified by a number of cases from a number of states, including Cromie's Heirs v. Orphans' Home Society, 3 Bush, 365, in which case an analogous question was before this court. In that case this court in touching upon this question, although the charities were not entirely similar, or rather the propositions were not the same, used this language:

''But the counsel for appellant heirs insist, that though the testator intended to give, yet neither of the New York claimants had a legal right to take, because the law authorizing their charters limited their right to hold corporate property to fifty thousand dollars realty and seventy-five thousand dollars personalty; the annual income of the aggregate not to exceed ten thousand dollars; and because neither the amount claimed under Cromie's will, nor the value of the corporate property owned by either of the New York claimants appearing on the record, neither has shown that he did not, at Cromie's death, own property to the maximum allowed by the law of New York.

''This argument, though plausible, is not sound and available for the purpose of making the devise void.''

The precise question was before the Supreme Court of the State of Missouri in the case of Barkley v. Donnally, 112 Mo., 561. The inhibtion as to the number of acres which a church might hold was to be found in the constitution of the state of Missouri, and the amount was limited to only one acre, at least for certain purposes.

The property attempted to be devised exceeded that limit, and it was claimed that the church was deprived of the right to take even one acre because of this section, but the court in denying this contention on page 570, says:

"We think the proper construction of these sections of the constitution does not require a church to give up property not exceeding one acre in extent, simply because the will or deed by which it derived title devised or conveyed land exceeding one acre in extent, but the title to the excess having subsequently failed." See, also, McKeown v. Officer, 2 Silv. Sup. (N. Y.), 552, 6 N. Y. Suppl., 201 (affirmed in 127 N. Y., 687, 28 N. E., 401); Kearney v. St. Paul Apostle Missionary Soc. 10 Abb. N. Cas. (N. Y., 274).

Without elaborating this opinion, we are convinced that the judgment disposing of this branch of the case is correct.

Considering now the second sub-division of the first question (b), but little need be said. All power to make a will emanates from the statute and such statutes are to be read into and made a part of the will. The testator in this case devised the property in question to a trustee to be named, but did not prescribe the use to which it might be put, but her will was made in the light of the statute and it gives the will effect only within the provisions of its terms. It confines the use of the property to the terms of the statute and the act of the testator in making the will is as though the statute had been referred to and made a part of it. The law will write it into a will, just as all human transactions may be circumscribed and proscribed by the prevailing law of the land. The testatrix did not attach any use contrary to the terms of the statute. The fact that the testator did not prescribe the use of this land, is supplied by the statute, and we see no reason for withholding the validity of the devise, because it was not expressly mentioned in the will that the uses should be limited to those found in the statute. Incidentally, it is urged that the church has not manifested its intention in the proper way to use the property as required by the statute, and that those who are now in authority can not speak for those who might be in authority when the period arrives for the taking possession thereof, and that the judgment is erroneous for this reason: It is a sufficient answer to this to say that the church appears in this case, after having

been made a defendant, and solemnly answers as hereinbefore stated. The appellants are in no position to say that these statements, as to its purposes and intentions are untrue, because it has been invited into the court by the appellants, which invitation it has accepted, and through its attorneys filed its answer as stated. Moreover, even if it should fail when the time arrives to use this property as the statute prescribes, it will then be time enough for those in whom the right exists, to take whatever steps that may be necessary to correct any derelictions on the part of the church, or to adjust the rights of all parties as they may then exist.

Second: Did the court correctly order the balance in the hands of the executor paid to appellee, Irene Moore?

The will directs that she shall have the rents and control of the property from which the fund was derived during her life, and in another part says: "The rents must not be alienated from her except in so far as I shall state in a private paper to her." The executor was authorized to rent out the farm and from the proceeds thereof to pay the debts, which he did, and he also paid the burial expenses, doctor's bills, and the inheritance tax. Two years' rent, being for the years 1911 and 1912, he contracted himself and subsequently collected the notes. If he collected more than was necessary to defray the items mentioned in the will, it can not with any plausibility be said that he converted the rents thus collected into assets of the estate. The appellee, Irene Moore, became vested with her interest in the property instantly upon the death of the testatrix, and the rule is fundamental in this State that rents collected after the death of the testator, or of the decedent without a will, go to the devisee of the land in the one case, or to the inheritors of the land in the other case. Besides, such a construction as appellants urge would be violating the intention of the testatrix as expressed in the clause quoted above. Whatever moneys the executor had, over and above that which was necessary to defray expenses specified, he held as agent of the owner of the property at the time, which owner was appellee, Irene Moore, and we are unaware of any rule of law that would deprive her of it.

As to whether the court properly adjudged that the appellee, Irene Moore, could sell the house and lot in

Harrodsburg, these appellants have nothing to do, because the provision in which the power is attempted to be conferred is not void for any purpose, and if the Episcopal church should become the remote or remainder devisee in any part of this fund, it is perfectly lawful for it to be so, because it would then be given personal property, being the proceeds of the lot, against which there is no inhibitory statute in this State.

We conclude from the foregoing that the judgment appealed from is correct, and it is affirmed.