In the matter of the application of REBECCA H. SHREVE and LUCY E. SHREVE for sale of lands limited over, &c.

[Decided February 13th, 1917.]

1. When a· sale of lands of adults in given circumstances would be confirmed, a sale of infants' lands, in like circumstances, should be confirmed.

2. Infants' rights are not superior to those of adults; the difference between the two classes of persons is, that the rights of infants must be protected by the court, while adults must protect their own interests.

3. The superior equities of adults are not to be defeated because the adversary parties are infants.

---

On application for confirmation of sale.

*Mr. Scott Scammell,* for the St. Regis Corporation.

*Mr. Harold B. Wells,* for the petitioners.

*Mr. Ellis L. Pierson,* for Robert H. McAdams, guardian *ad litem.*

WALKER, CHANCELLOR (orally).

On July 28th, 1913, an order was made to sell certain lands in the city of Trenton limited over, &c., at public or private sale in fee, for not less than $56,200, subject to a mortgage of $5,-000. On February 23d, 1916, the master who was ordered to make the sale reported that he had secured the St. Regis Corporation to purchase the real estate in the order described, subject to the mortgage of $5,000, at private sale for the sum of $58,-400, $1,000 having been paid to the master upon the acceptance of the offer and the balance of $57,400 to be paid in lawful money upon the delivery of a proper deed, provided that the sale should be confirmed by the court; the $1,000 to be returned in the event of non-confirmation. The offer to purchase was made pursuant to the terms of a certain agreement, in writing, dated July 11th, 1914, between Rebecca H. Shreve and Lucy E. Shreve, life tenants of the premises, and Lucy E. Shreve, guardian of Dorothy I. and E. Mercer Shreve, infant remaindermen, and certain other contingent remaindermen of the first part, and the St. Regis Corporation of the second part. The agreement, among other things, recited that upon its signing the St. Regis Corporation would deposit in the Broad Street National Bank of Trenton, in the names of W. Henry Elfreth and Ellis L. Pierson, trustees, the sum of $1,600 to secure the payment to Clifford A. Worthington, a real estate broker, commissions claimed by him for the sale of the premises in question. The time of conveyance under the agreement was to be July 1st, 1916. Of course, this agreement did not obligate the infants. It is because their estate in the premises could only be sold by sanction of this court that these proceedings were instituted.

On July 11th, 1914, an indenture of lease was entered into

between Rebecca H. Shreve and Lucy E. Shreve, the life tenants, and Lucy E. Shreve, guardian of Dorothy I. and E. Mercer Shreve, infant remaindermen, and the other contingent remaindermen of the first part, and the St. Regis Corporation of the second part, wherein the premises in question were demised to the party of the second part for the sum of $3,250 per annum, for the term of five years, payment to be made solely to Rebecca H. Shreve if she should live throughout the term, and, in the event of her death, then to Lucy E. Shreve for the balance of the term, and, in the event of·the death of both during the term, then to a certain attorney for the persons entitled to receive the same. By the terms of the lease the party of the second part was to pay all taxes, water rents and municipal assessments; keep the buildings insured against loss by fire; make all necessary repairs to the demised premises; the leases then in existence between Rebecca H. Shreve and the tenants of rooms, offices and stores in the building were assigned to the party of the second part, together with rents reserved therein; the party of the second part at its own expense might make alterations, improvements and additions to the demised premises, and tear down all or any portion of the buildings then or subsequently on the premises and erect other buildings in their place, upon certain conditions set out.

On April 8th, 1916, an order was made on application of the solicitor of the St. Regis Corporation that the other parties in interest show cause why the report of the special master should not be ratified and confirmed and the master directed to execute· a good and sufficient deed to the purchaser upon its compliance with the terms of the sale. On the return day confirmation was resisted by Robert H. McAdams, guardian *ad litem* of the infants, Dorothy Inskeep and Edwin Mercer Shreve. An order was made that testimony be taken, which was done, and the matter is now before the court on the question as to whether or not the sale shall be confirmed.

The ground of objection to the sale is that the property has appreciated in value between the time that the order for sale was made and the time of the hearing, and that the interests of the infants no longer require a sale of the property.

The petitioners, Rebecca H. Shreve and Lucy E. Shreve, are the owners of successive life estates in the property, and the infant remaindermen, who are the children of Lucy E. Shreve and grandchildren of Rebecca H. Shreve, are entirely dependent for their support, maintenance and education on the income derived from the property in question and a small income derived from another property in Riverton. The net income derived from the Shreve building (the premises in question) when the order for sale was made was eight hundred odd dollars per annum, which, together with the income derived from the other property, was insufficient for the proper support and maintenance of the parties dependent on it, to say nothing of the education of 'the minors.' The building, which was used for office purposes, was unsuitable, and its value was constantly diminishing, and its carrying expenses constantly increasing. The land on which it stood was worth, apparently, $1,200 per front foot, and the building was of comparatively little value. The difference between the income of five per cent. on the proposed selling price, and the net income derived from the property at that time, it appeared, would equal any reasonably anticipated increase in value of the property. The confirmation of the master's report, and the order for sale of the premises at the price proposed, was an adjudication of the adequacy of the price and of the advisability of the sale at the time it was entered. As title was not to be passed immediately upon the making of the agreement above mentioned, the scheme of the lease was adopted, the rental being fixed at five per cent. of the gross sale price, namely, $65,000; that is to say, $58,400 to be paid to the owners of the fee, $1,600 to be deposited to cover Mr. Worthington's commissions, and $5,000, the amount of the mortgage on the premises, making $65,000 in all. By order of July 18th, 1914, a modification was made to the order for sale so as to permit of it free of the mortgage and for a payment of $10,000 in cash and the balance in a purchase-money mortgage. The St. Regis Corporation went into possession almost immediately after the execution of the agreement and lease, and has paid the taxes and the rent and improved the property (a motion picture

theatre) at considerable cost, approximately $11,500 by cash outlay and an indebtedness incurred of some $16,000.

The ground of objection to the confirmation of the sale is, as already stated, that the land has increased in value since the making of the order to sell, and real estate agents have testified that that increase has been about $100 per front foot, or $5,100 in all.

There can be no doubt that if we were dealing with adults alone in this case, the sale ought to be confirmed, and the mere presence of infants ought not to defeat it. It is not disputed but that the order for sale was properly made—that is, based upon a proper showing. In reliance upon that order the St. Regis Corporation has gone into possession and improved the property by expenditure of a considerable sum of money and the incurring of considerable liability, and it is therefore quite apparent that it would be ruinous to it if the sale were not confirmed. Those who are *sui juris* have rights against infants; in fact, I do not understand that infants' rights are superior to those of adults, only that the rights of infants must be protected by the courts, while those of adults must be looked after by themselves. It is for this reason that whenever infants are present a guardian is appointed for them, which was done in this case, and these infants have had their day in court. If the sale had been reported and confirmed immediately upon its authorization, the infants' situation would be the same now as then, and, it appears, will continue the same for years, for they cannot come into possession until the termination of the particular estates upon the death of their grandmother and mother, and this only upon surviving both of them. During the lifetime of the grandmother she has the entire income, and upon her death, the mother surviving, she will have it, and upon the death of both, the infants will possess the estate, if living. While they have no present legal interest in the income from the property the testimony shows that their support, maintenance and education are derived from it, and the other small property of the Shreve estate, and that they are and have been beneficiaries of the income derived under the agreement, which increases that income approximately fourfold from what it had been pre-

viously. The agreement and lease were executed in reliance upon the lessee ultimately acquiring the property under these proceedings, and to defeat that expectation now would do far greater injustice to the St. Regis Corporation than confirmation of the sale would do the Shreve children. On any theory of balancing equities the case is with the former. I do not understand that the company's equities are to be defeated because the adversary parties are infants.

In my opinion, the sale should be confirmed, and that will be done. The terms of the order will be settled on application.