# McIntire's Administrator et al. v. Bond et al.

(Decided February 1, 1929.)

WOOTTON & WOOTON, NAPIER & HELM and C. W. HOGG for appellants.

O'REAR, FOWLER & WALLACE, ALLEN PREWITT and IKE WILDER for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

On April 5, 1920, Alex McIntire, Sr., then the owner of a farm comprising 225 acres more or less, executed an oil and gas lease covering these premises in favor of the Petroleum Exploration. He died on May 7, 1922, leaving nine heirs. At the time of his death there had been no development of the premises by the lessee of the oil and gas lease above mentioned. In June, 1922, the farm left by Alex McIntire, Sr., was divided by partition proceedings in the county court among his nine heirs, and they executed partition deeds to one another for their respective tracts. Nothing was said in the partition proceedings or the partition deeds about the oil and gas lease or the oil and gas that might be under the land. On April 3, 1923, the Petroleum Exploration brought in a gas well on that part of the farm which had been allotted and

deeded to the appellee. This well was drilled at a location selected by the Petroleum Exploration without any suggestion or assistance from any of the heirs of Alex McIntire, Sr. The lease is not in the record, but the substance of enough of it is set out to warrant the assumption that it is the ordinary oil and gas lease providing for a rental based on the acreage involved until development and thereafter a royalty for the oil and gas extracted.

The question presented by this case is whether the owner of the tract upon which the gas well is located is entitled to the royalty provided for by the lease when gas is extracted from gas wells, or should this royalty be apportioned among all the owners of the tract which was leased by Alex McIntire, Sr., and which was later partitioned among them as hereinbefore set out. The lower court adjudged that the owner of the tract upon which the gas well is located was entitled to the royalty, and from that judgment this appeal is prosecuted.

In the case of Caudill Coal Co. v. Solner Mining Co., 198 Ky. 243, 248 S. W. 533, we held that royalties in this state contracted to be paid the lessor for the use of coal property are regarded as rents, and the same is true with reference to royalties in oil and gas leases. Thus in the case of Crain v. West, 191 Ky. 1, 229 S. W. 51, it was held that oil wells and other mines which a deceased husband opened on his lands during his life, or which were opened after his death by persons with whom he had made enforceable contracts for that purpose during his lifetime, are real estate, of which the widow is dowable, and that under the Statutes, sec. 2138, until dower was assigned to her, she was entitled to one-third of the royalties as rents. This decision naturally followed from the rule in this state that oil and gas leases are interests in real estate. Union Gas & Oil Co. v. Wiedeman Oil Co., 211 Ky. 361, 277 S. W. 323; Beckett-Iseman Oil Co. v. Backer, 165 Ky. 818, 178 S. W. 1084. The royalty is compensation for the privilege or rights created by the lease, and, since such privileges or rights are by settled law in this state an interest in real estate, then the royalty, being a payment for such interest in real estate, is an incorporeal hereditament issuing out of the land and hence rent. If this be true, then, unless severed from the reversion, unaccrued royalties should be incidents to the reversion and pass with it, since it is settled that, without a reservation of the rents, an alienation of the reversion by the

act of the landlord or by force of law vests in the alienee the subsequently accruing rents. Combs' Devisees v. Branch, 4 Dana, 547; Compton v. Moore, 167 Ky. 657, 181 S. W. 360. That it does in this state may be seen from the case of Goosling v. Pinson, 198 Ky. 57, 248 S. W. 248, where the testator had in his lifetime made three coal leases on three separate tracts of land owned by him. On two of them, there was development before his death, but not so on the third. He devised these lands to his widow for life, with remainders over. It was held that the life tenant took the royalties on all three tracts as against the executor.

From what has been said, it follows that, on the death of Alex McIntire, Sr., intestate, the land covered by the lease here in question descended to his heirs at law, burdened with the lease in favor of the Petroleum Exploration, and, incident to the reversion which thus descended, the rights to royalties to accrue in the future under this lease also passed to these heirs at law.

What effect did the partition proceedings then have? That, in turn, must depend on what the royalty for the developed oil or gas well pays for. In the note found in 31 Harvard Law Review, 882, to the case of Campbell v. Lynch, 81 W. Va. 374, 94 S. E. 739, L. R. A. 1918B, 1070, it is said that it is a return for the right to take oil from the land whence the oil is taken. It is partially on this theory that the later case of Musgrave v. Musgrave, 86 W. Va. 119, 103 S. E. 302, 16 A. L. R. 564, overruled the Campbell case, supra, and it is fundamental to the decisions of Osborn v. Arkansas-Territorial Oil & Gas Co., 103 Ark. 175, 146 S. W. 122; Kimbley v. Luckey, 72 Okl. 217, 179 P. 928; Pierce Oil Corp. v. Schacht, 75 Okl. 101, 181 P. 731; Fairbanks v. Warrum, 56 Ind. App. 337, 104 N. E. 983, 1141; Northwestern Ohio Natural Gas Co. v. Ullery, 68 Ohio St. 259, 67 N. E. 494. The error in the assumption necessary to these decisions is so well pointed out in the dissenting opinion of Judge Poffenbarger in the Musgrave case that we quote from it: "Manifestly it is that, but it is just as clearly something more than that. Besides paying for the oil taken out, it holds the lease on all of the land and oil included within its boundaries. It maintains the lessee's right to carry his operations to every part of the tract and precludes operation or mining on any part of it by the owner and everybody else except assignees of the lessee. How then can it be said to be only pay for the oil taken out? A full and

true definition of anything must accord fully with its nature and characteristics. 'A definition is a description of a thing by its properties or a conception by its attributes.' Webster. As a royalty does more in fact and in law than pay for the oil taken out, a description of it, calling it pay for oil taken out, is true as far as it goes, but it stops short of revelation or narration of its complete nature and character. Any intelligent layman on the street knows it does more than that and no lawyer can maintain his client's case in any court, upon the proposition that the royalty only pays for the oil taken out.''

Now the royalty being a rental payment not only for the oil taken out but also for the holding of the rest of the land, when the land was partitioned among the heirs as was done in this case without mention of the lease or the royalties to accrue under it, such royalties or rents must be apportioned among the heirs in accordance with the principle of apportionment of rents. In 36 C. J. 380, it is said: ''Where an estate under lease is severed, whether by a partial grant of the reversion, or, upon the death of the lessor, by a descent to the heirs at law, or by a taking under an execution against the lessor, the rent which is said to issue out of the land and to be incident thereto will be apportioned between or among the respective owners. The right of the reversioner to an apportionment of the rent may rest on privity of estate or on privity of contract, and attaches at the moment of conveyance and without more; nor is the consent or attornment of the tenant material to its operation.'' See, also, Freeman, Cotenancy & Partition, sec. 346.

We are aware that a different result from that here arrived at was reached in the Osborn v. Arkansas-Territorial Oil & Gas Co., supra, Kimbley v. Luckey, supra, Pierce Oil Corp. v. Schacht, supra, Fairbanks v. Warrum, supra, Northwestern Ohio Natural Gas Co. v. Ullery, supra, and Musgrave v. Musgrave, supra, Cases, but, as pointed out, we cannot agree with the assumption fundamental to them, and although overruled by the Musgrave Case, we regard the Campbell Case and the dissenting opinion of Judge Poffenbarger in the Musgrave Case as sound. The Pennsylvania courts have arrived at the same result reached in this opinion (Wettengel v. Gormley, 160 Pa. 559, 28 A. 934, 40 Am. St. Rep. 733; Id., 184 Pa. 354, 39 A. 57), though on a different theory.

It follows that the lower court erred in not apportioning the royalties here in dispute, for which reason the

judgment is reversed, with instructions to enter a judgment apportioning the royalties in accordance with the principle of apportionment of rents.

Whole court sitting.