## Vanderpool's Guardian et al. v. Louisville Gas & Electric Company.

(Decided Nov. 17, 1933.)

338

J. B. ADAMSON and E. E. ARNETT for appellants.

H. H. RAMEY for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Affirming.

Dorcas Vanderpool owned 50 acres of land in Magoffin county and died leaving four infant children surviving her. On January 13, 1922, her husband, J. B. Vanderpool, as guardian for the infant children, executed an oil and gas lease to J. Fred Reed and filed a proceeding in the Magoffin circuit court to obtain the court's approval of the lease under section 2031a-3, Kentucky Statutes. Two copies of the proposed lease were filed with the petition; one copy being attached to the petition and the other not attached to it, possibly in order that it could be withdrawn from the record and recorded. The circuit court approved the lease by judgment duly entered and the judge indorsed on both copies his approval thereof. The loose copy was then certified by the clerk to the county clerk's office and was there recorded. The lease was drawn upon a printed blank, which provided that the lessee would pay the lessors and annual rental of 50 cents an acre, payable quarterly until a well was put down and $100 a year for every well from which gas was piped. Under the weight of the evidence the paper that was taken to the county clerk's office for record read $100, and was so recorded on the book, but the record was afterwards changed by some one to $300. The appellants introduced some proof that Judge Gardner, the circuit judge, had the lease in his hand when the case was under submission and in the presence of the guardian said that $300 was the usual price and that infants ought to receive that. When this controversy arose, an examination of the paper attached to the petition showed that the figure 3 had been written over the figure 1, and the plaintiffs introduced some proof that this writing was in Judge Gardner's handwriting. He was dead when the controversy arose. On the other hand, the defendant introduced some proof that the figure 3 on the copy in the clerk's office is in the same handwriting

and the same ink as the figure 3 now on the record book of the county clerk, and that Vanderpool was seen often looking at these records about the time this controversy came up. The record as a whole leaves little doubt that the county court record originally read $100. The original paper which was recorded by the county clerk is produced and reads $100. No change has been made in it. It bears the approval of the circuit judge and is certified by the circuit clerk and the county clerk.

Reed assigned the lease on January 16, 1922, to Young & Co. They held the lease and paid the rentals until Januarky 9, 1923, when they wrote Vanderpool, the guardian, that they would not pay any longer and would release all rights. They inclosed in their letter a deed of release, duly acknowledged. Vanderpool made no answer to this letter and took no steps. In October, 1923, W. P. Carpenter, etc., wanted to lease the property. Vanderpool explained the situation to them and they suggested that as the old record stood and no release had been recorded, to save cost, they would get an assignment from Young & Co. of their lease. Vanderpool agreed to this. They got an assignment from Young & Co.; paid Vanderpool $25, the rent in arrear, and after this on August 28, 1925, they sold the lease to Sam Metzer, and Metzer on June 31, 1926, sold it to R. J. Graff, trustee, Graff on December 1, 1927, sold it to the West Virginia & Gas Company, and from it the lease passed to appellee. None of these purchasers knew anything about any release of the original lease by Young & Co. A flowing gas well was put down on the property on January 11, 1927, at a cost of $5,886.31. The company then offered to pay Vanderpool $100 a year for this well. His rentals had been paid until that time to him regularly. He declined to accept the check for $100 and insisted that the company owed him $300 a year for the well. He finally accepted the check for $100, but as he says with an agreement with the company that it was not to prejudice his claim for the other $200.

The four children and their guardian brought this action on March 8, 1928, insisting (1) that the lease made in 1922 was canceled by the deed of release executed in 1923, above referred to, and was thereafter void and passed no rights to the subsequent purchasers of it, although they were bona fide purchasers without notice, and (2) that the original lease, calling for $100

a year for each well, was changed by the circuit judge to read $300 a year, and, praying judgment, if the lease was upheld, for $300 a year instead of $100 a year for each well. Voluminous proof was taken and on final hearing the circuit court entered judgment in favor of the plaintiffs for $100 and upheld the lease. The plaintiffs appeal.

■ Did appellee acquire title? Section 500, Kentucky Statutes, provides:

"Any contract for the sale of land, or any interest therein, when acknowledged or proven as deeds are required to be, may be recorded in the county in which such lands are situated, in the same offices and books in which deeds are recorded, and the record of all such contracts recorded shall, from the time of lodging the same for record, be notice of such contracts to all persons."

It is well settled that oil and gas leases convey an interest in real estate and are within the statute. Beckett-Iseman Oil Co. v. Backer, 165 Ky. 818, 178 S. W. 1084; Union Gas & Oil Co. v. Wiedman Oil Co., 211 Ky. 361, 277 S. W. 323; McIntire's Adm'r v. Bond, 227 Ky. 607, 13 S. W. (2d) 772, 64 A. L. R. 630; 40 C. J. p. 904. By section 496, Ky. Stats., it is provided that no conveyance of an interest in land "shall be valid against a purchaser for a valuable consideration, without notice thereof" unless duly lodged for record. Under the statute the purchaser for a valuable consideration without notice is not affected by an unrecorded deed. Ky. Coal Co. v. Conley, 184 Ky. 274, 211 S. W. 734; Farmer v. Tway Coal Co., 204 Ky. 356, 264 S. W. 743; Creech v. Wisconsin Steel Co., 218 Ky. 306, 291 S. W. 385.

It is conceded that appellee is a purchaser for a valuable consideration and without notice. If an adult had made the lease in question and then just what happened here had occurred, clearly appellee would be protected by the statute. It makes no exception in the case of infants, and the court is without authority to write an exception into it. Its purpose was to secure the developement of the state and to protect bona fide purchasers of the record title. To hold otherwise would be to defeat the essential purpose of the statute; for then no purchaser could rely upon the record.

In Hardin v. Harrington, 11 Bush, 367, Hardin was

an innocent purchaser without notice and infants owned an interest in the land. Judgment was given for the innocent purchaser against the infants. The court said:

> "That these appellees were infants when the purchase was made by the appellant places them in no better condition than their ancestor would be in if living, and the plaintiff in this action."

This was followed in Carrier v. Kavanaugh, 198 Ky. 26, 247 S. W. 1107, 1108, where the court on like facts said:

> "If Kavanaugh was an innocent purchaser of the land, he took a perfect title to the same even against the infants."

To the same effect see 22 Cyc. 528, 21 C. J. 1001, In re Shreve, 87 N. J. Eq. 7, 710, 103 A. 683.

■ Should the infants have recovered $300 a year for the well?

The proof as a whole leaves no room for reasonable doubt that the record in the county clerk's office originally read $100. This record was made upon the approval of the paper by the circuit court indorsed upon the paper, which was also duly certified by the clerk of the circuit court. It controls. The change from $100 to $300 was subsequently made, and, under all the facts, the circuit court was warranted in concluding that the change in the copy attached to the petition was made by the same hand as the change in the county court record. This court does not disturb the judgment of the circuit court on the facts, where on all the proof the mind is left in doubt as to the truth.

Judgment affirmed.