# Stratton v. Kentucky & West Virginia Gas Co. et al.

Nov. 24, 1944.

P. ·B. Stratton in pro. per., for appellant.

F. L. Rice for Gas Co., appellee.

Sidney Trivett for K. Y. Lowe, appellee.

Willis Staton for A. Lowe, appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On and prior to August 5, 1926, Adron R. Lowe, K. Y. Lowe, A. T. Lowe and E. B. Lowe were the owners of a tract of land in Pike County containing 438.55 acres with Adron R. Lowe having a life estate in the entire tract and the other three owning the remainder in fee. On that date they executed an oil and gas lease to B. M. James covering the entire acreage.

In 1935 the life tenant died, thus vesting the entire title and immediate possession in the three remaindermen. A copy of the lease is filed as an exhibit with the petition, and it prescribed that the lessee should pay to lessors as deferred rentals in lieu of development fifty cents per acre annually until development of a well calling for the payment of royalty. In the meantime James transferred the lease to the appellee, and plaintiff below, Kentucky & West Virginia Gas Company, and it completed a royalty paying well on May 5, 1942. The lease contained a clause providing for the distribution of deferred rentals, one-fourth to the life tenant and one-fourth to each of the three remaindermen. But such payment to the life tenant ceased upon his death, and thereafter the deferred rental was paid one-third

each to the three remaindermen until after the leased tract was divided by the Pike circuit court in an action brought for that purpose.

Before that partition action was filed, appellant, P. B. Stratton, Trustee, acquired at a sheriff's sale the undivided interest of E. B. Lowe in and to the minerals underlying the entire tract. In the division of the tract by the court in the partition action there was allotted to A. T. Lowe 68.37 acres, to K. Y. Lowe 172.67 acres and to P. B. Stratton, Trustee, and E. B. Lowe 197.51 acres with Stratton procuring the mineral rights of E. B. Lowe, and the latter the surface in that parcel of 197.51 acres. On July 21, 1937, Stratton, Trustee, A. T. Lowe and K. Y. Lowe issued a distribution order to plaintiff, as assignee of the lessee in the lease, directing it to pay to the lessors the deferred rental, which was then being paid under the lease, in the proportion that the acreage of their respective allotments in the division suit bore to the acreage of the entire tract, which was, 16% to A. T. Lowe, 39% to K. Y. Lowe, and 45% to P. B. Stratton, Trustee. However, the distribution order as appears from the pleadings (though neither it nor copy of it is brought here) was followed in the payment of the deferred rentals, until May 5, 1942, the date of the completion of the royalty paying well, which was on the tract of 68.37 acres allotted to A. T. Lowe. The distribution order, as alleged in the pleadings and admitted, contained this qualifying language: "until further notice." After the royalty producing well was completed—the royalty from it being $200 per annum—A. T. Lowe gave notice to appellant as owner of the lessee's right under the lease, that he would no longer accept the apportionment of the royalty on terms that he had theretofore received in deferred rentals under the distribution order. Thereupon the gas company filed this action in the Pike circuit court against the three surviving Lowes and their wives and Stratton, who had acquired an interest in E. B. Lowe's share, wherein it alleged the above facts and prayed the court to adjudge the rights of the parties in and to the royalty of $200 per annum on the one well that had been drilled, and on all future drilled wells in any part of the divided tract.

Defendants answered setting forth their respective contentions and making their answers cross-petitions

against the other lessors, K. Y. Lowe and Stratton, insisting that they should receive the proportion of royalty as set forth in the distribution order, whilst A. T. Lowe contended in his pleading that he gave notice that he would no longer be bound by the division contained in the distribution order which applied only to the deferred rentals, and not to the division of royalties accrued after development. He first contended that he was entitled to all of the royalty accruing from the only well that had been drilled, since it was located on the parcel of the land allotted to him in the division suit, but if not entitled to that, he was entitled to one-third of such royalty. Appropriate pleadings formed the issue, and the court on final submission adjudged "that one-third of the royalties on the entire tract described in the petition shall be paid by plaintiff to A. T. Lowe, one-third to K. Y. Lowe and one-third to P. B. Stratton, the same to be paid according to the terms of the lease as to time of payment." From that judgment only Stratton prosecutes this appeal, insisting that he should receive the pro rata of royalty that the acreage of the divided surface that he received in the partition suit bore to the entire acreage of the divided tract, which was 45%.

Whether or not his contention is correct is entirely dependent upon whether a division of the minerals under the divided tract has also been made by the lessors in proportion to the surface they received in the partition action, either by a valid and enforcible agreement among themselves, or by the court in a judgment rendered in a cause to which they were parties and to which they consented and acquiesced. The only voluntary agreement found in the record, and relied on by appellant, is the division order to which we have referred, but, as we have seen, that order reserved the right to alter it upon the giving of notice, but which was not done by any of the interested parties until the royalty producing well was brought in. Consequently it applied and was acquiesced in during the period of payment of deferred rentals. Furthermore, if at the time the division order was given there had not been a division of the minerals under the entire tract, then the mere giving and consenting to the division of the rentals in the proportion stated in that order, would be without consideration, since if there had been no such division at that time each of the joint tenants in the minerals would be entitled to receive their proportion of the roy-

alty according to their joint ownership in the divided tract, which was one-third each, and which the cases of McIntire's Adm'r v. Bond, 227 Ky. 607, 13 S. W. 2d 772, 64 A. L. R. 630, Hurst v. Paken Oil Co., 287 Ky. 257, 152 S. W. 2d 981, and other cases and authorities cited in those opinions so declare.

In the petition, as well as the pleadings of defendants' containing counterclaims, the partition action is referred to and expressly made a part of such pleadings, and asked that the record in that suit be read and considered in the determination of this instant case. But no part of that record is brought to this court, and we are entirely ignorant of what it contains. We are, therefore, unacquainted with the particular relief sought in that case, i. e., whether it sought a division of both surface and minerals, or only the surface. Nor are we aware of what property the judgment in that case divided, or what the deeds executed by the commissioner in that action actually conveyed. Neither has there been furnished to us what property or interest the sheriff's sale conveyed to Stratton, the purchaser. The trial court, as we have seen, did possess such information, and if it substantiates the fact that no binding division had ever been made of the minerals, then the judgment appealed from, under the authorities supra, was and is correct. In such circumstances it is the universal rule that the judgment appealed from will not be disturbed, since it will be presumed that the essential facts not brought to this court, but considered by the trial court, authorized the judgment rendered by it.

Applying that rule here it necessarily follows that the judgment should be, and it is, affirmed.

The whole Court sitting.