Beatrice COLLINS, Appellant,

v.

INLAND GAS CORPORATION et al.,
Appellees.

Court of Appeals of Kentucky.

March 20, 1964.

Rehearing Denied Oct. 16, 1964.

Scott Collins, Prestonsburg, Earl Cooper, Salyersville, for appellant.

Gray, Woods & Cooper, Ashland, Paul C. Combs, Prestonsburg, for appellees.

DAVIS, Commissioner.

This appeal from the Magoffin Circuit Court presents the question of distribution of royalties arising from two producing gas wells. The original gas and oil lease embraced one 200-acre tract. The tract was partitioned into five parcels after the execution of the lease. Appellant now owns three of the separate parcels; appellee Cooley owns the other two parcels. The gas wells are located on the property owned by Cooley. Cooley contends that he is entitled to all of the royalties from the two wells, but appellant contends that the royalties should be apportioned between appellant and Cooley in the same ratio their respective acreages bear to the entire acreage of the original tract. Appellant offered alternative pleas that if apportionment should not be granted, then the lessee gas company should be required to drill an offset well on the surface of appellant's land, or, failing that, then the lease should be cancelled insofar as it relates to appellant's lands. The trial court entered judgment alloting all of the royalties to Cooley, adjudging that the gas company was not required to drill any offset well on appellant's land, and refusing to cancel the lease as to appellant's land.

By written lease dated February 26, 1923, John E. Stephens and Mary Stephens, husband and wife, granted oil and gas rights to Henry S. Chapman, covering the entire tract owned by grantors. By mesne conveyances appellee Inland Gas Corporation became, and is, the lessee holding under that original lease. The lease was for a term of five years "and as long thereafter as oil or gas or either of them is produced * * * by lessee, his successors or assigns." The lease expressly binds all parties in interest who succeed to the rights of lessor or lessee in any manner. The lessor

is assured as royalty "one-eighth part of the proceeds of all the oil saved and sold" of that produced on the premises, and $300 per year for the gas from each well where gas only is found.

John and Mary Stephens, the lessors and owners of the 200-acre tract, were the parents of five children. By four separate deeds, each bearing date August 23, 1924, they conveyed forty acres apiece to four of their five children. Each of these deeds recites a consideration of $200 and love and affection. Significantly, each of the deeds also contains the following language:

> "The first parties reserving the oil and gas and to tend some of the tenable (*sic*) land on this tract or parcel of land when necessary for his support * * * At the death of the first parties the oil and gas shall fall to the *owners* of the land." (Emphasis added)

A fifth deed to the remaining child of John and Mary Stephens was dated April 11, 1925, and contained the same language just quoted. The reason prompting the delay in the execution and delivery of the fifth deed is not disclosed by the record, nor does it appear significant.

It is noteworthy that the deed to Will Press Stephens (one of the five children), dated August 23, 1924, contains the following expression:

> "The first parties excepting the home place where there is a new building going up during their life time, then at their death the house falls to the *second party*." (Emphasis added)

The precise time the two gas wells were drilled is not made clear from the record before us. It appears reasonably certain that neither of the wells was drilled until *after* the partition of the 200 acres among the five children. It is certain that the prescribed royalties from the gas wells were promptly paid to John and Mary Stephens while they both lived, and thereafter the payments were received by Mary Stephens until her death. Meanwhile, the appellant, Collins, has become the owner of three of the five 40-acre tracts, and appellee Cooley owns the other two, and upon which are located the same two gas wells.

The appellant urges that the principles enunciated in McIntire's Adm'r v. Bond, 227 Ky. 607, 13 S.W.2d 772, 64 A.L.R. 630, support an apportionment of the royalties on an acreage basis. Appellee Cooley insists that McIntire, supra, is unsound and that the rule of Hurst v. Paken Oil Co., 287 Ky. 257, 152 S.W.2d 981, must control. Other decisions touching upon the issue and which the parties discuss include: Keystone Gas Co. v. Allen, 227 Ky. 801, 14 S.W. 2d 155; Hammond v. Hammond, 292 Ky. 659, 167 S.W.2d 865; Stratton v. Kentucky and West Va. Gas Co., 298 Ky. 651, 183 S.W.2d 817; and Hurst v. Kentucky Oil & Distributing Corp., Ky., 255 S.W.2d 467. Further research of the interesting legal principle here raised may be had by reference to 3A Summers, Oil & Gas, § 608, and Thornton, Oil & Gas, Vol. 2, § 373.

In general, it may be said that the McIntire rule provides for apportionment of royalties on an acreage basis when a tract covered by lease has been subdivided without mention of the royalties to accrue under it. The Hurst case, without expressly overruling McIntire, reaches opposite result. In Hurst it was written that under circumstances similar to those at bar "each owner is entitled to the oil and gas produced on his tract and to the royalties * * * arising from * * * oil and gas produced * * * on such tract, provided, there is no reservation of the mineral rights in the deed." In Stratton v. Kentucky & West Va. Gas Co., supra, we cited McIntire and Hurst as jointly supporting the proposition that apportionment of royalties according to surface acreage would be automatic unless there had been "a division of the minerals under the divided tract."

■ It is not necessary to undertake reconciliation of McIntire and Hurst in this

case. Rather, we seek the construction of the Stephens deeds looking toward determination of the intention of the grantors. It may not be doubted that *equality* among the five Stephens children was the prime intention of the granting Stephens parents. Each child received forty acres; each deed recited an identical consideration; and each contained the same language relating to the "falling" of the oil and gas. Apart from the normally assumed equality of treatment of children, these deeds fairly shout of the grantors' intention to treat the five children alike. As noted in many decisions, including Combs v. Hounshell, Ky., 347 S.W.2d 550, and Riley v. Riley, Ky., 266 S.W.2d 109, we are fully committed to that deed construction to effect the intention of the parties as it can be gathered from the language as a whole.

The granting Stephens parents retained a life estate in the oil and gas; the oil and gas were subject to the lease; such royalties as should arise from those minerals were payable to the Stephens parents during their lives. It seems clear that the plain intent of the grantors was that each child should succeed to an equal share in what the grantors had. As to the surface of the five tracts, there was no postponement of enjoyment; as to the oil and gas, the enjoyment was postponed so long as either of the grantors lived. The parents, during their lives, received the royalties from the two gas wells involved here. It may not be supposed that they attributed the royalties to any particular portion of the 200-acre tract. The right to the royalties was an incident of the ownership of the 200 acres—as a whole—not as to any specific portion. So, upon the termination of the life estates, the right to the royalties "falls" to the owners of the land in exactly the same manner. The owner of each tract succeeded to a proportionate right to share in the royalties. The successors in title to those five children, appellant and appellee Cooley, succeed to the rights of the children. Thus, the appellant, as owner of three of the five tracts, is entitled to 3/5ths

of the royalties, and appellee Cooley is entitled to 2/5ths thereof. The contrary declaration of rights by the trial court is erroneous.

This conclusion makes it unnecessary to consider the alternate pleas of appellant for an offset well or cancellation of the lease as to her tracts.

The judgment is reversed for entry of judgment declaring the rights of the parties consistently with this opinion.