## Breckenridge Asphalt Co. v. Richardson.

(Decided April 23, 1912.)

### Appeal from Breckenridge Circuit Court.

Lessor and Lessee—Lease—When May Be Cancelled.—The lessor may have a cancellation of a lease for an asphalt mine where by the terms of the lease there was no other consideration for it than the payment of 10 cents a ton for the asphalt taken out and the lessee had ceased to operate the mine and had done no work on it for seven years.

JOHN P. HASWELL, JR., GIBSON, MARSHALL & CRAWFORD for appellant.

MURRAY & MURRAY and GUS BROWN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

On December 10, 1888, Taylor Compton and wife executed to Ed Bennett and Company, a lease. Bennett and Company transferred the lease to the Breckenridge Asphalt Company who entered upon the property and operated an asphalt mine which was worked by it until the year 1900. About the year 1902, it removed from the premises its machinery and since that time it has done nothing under the lease except that it paid Compton $20 a year as rental, which he accepted. In the year 1905, I. B. Richardson bought the land and received a deed for it. For the years 1905, 1906 and 1907 he received $20 a year as rental from the Breckenridge Asphalt Company, but he accepted this upon the promises made to him by the company each year that it would begin operations next year. He refused to receive the $20 for the year 1908 or for any subsequent year although it was tendered to him; and brought this suit to obtain a cancellation of the lease. The circuit court adjudged him the relief sought and the Asphalt Company appeals.

The lease so far as material is in these words:

"This agreement made this 10th day of December, 1888, between Taylor Compton and Lizzie Compton, his wife, party of the first part and Ed Bennett & Co., party of the second part, witnesseth, that the said first party in consideration of the agreements hereinafter mentioned to be kept and performed by said second party, have granted, leased and demised and do hereby grant, lease and demise unto the said second party, their heirs and assigns all that tract or parcel of land situated in the Lost Run country, Breckenridge, Ky., described as follows, to-wit: M. P. Compton on the west and north, Fraser Horley on the east, Wyatt Stinnett on the south, and adjoining Stinnett on the southwest, it being 96 acres with the exclusive right to dig, bore and mine for and gather all oils or gases, coal, iron ore, salt limestone, bituminous sandstone or asphalt and all other materials to be found upon the aforesaid premises, to have and to hold the same for the term of fifty (50) years from this date, or so long as oil or gases, coal, iron, ore, salt limestone, bituminous sandstone or asphalt or other minerals are found in paying quantities; also the right of way to enter upon said premises for the purpose of operating, mining or removing said oils or gases, coal, iron, ore, salt, limestone, bituminous sandstone or asphalt or all other minerals therefrom, and full

power to erect all necessary buildings and tanks upon said premises for the purpose of procuring or storing said oils or gases, coal, iron ore, salt, limestone, sandstone or asphalt or all other minerals with the full right to the said second party of appropriation to their own use all the oils or gases, coal, iron ore, salt, limestone, bituminous sandstone or asphalt or other minerals found upon said premises during said term in consideration whereof the said second party agrees to give the said first party one-twentieth (1-20) part of the oils or gases, and ten cents (10) per ton of 2240 lbs. for all coal, iron ore, salt, limestone, bituminous sandstone or asphalt and all other minerals produced and saved from said premises to be delivered on said premises to the party of the first part.''

The Asphalt company introduced proof showing that the operation of the mine had not proven profitable for the reason that the Barbour Asphalt Company or Asphalt Trust, as it is called, had procured a monopoly of the business and that this asphalt was excluded from competition by reason of the restrictions which municipalities placed in the specifications for their work. The company also introduced proof to the effect that it intended to go to work as soon as these difficulties were removed, and that it had been hoping each year to get them out of the way, but had heretofore failed to do so. Its proof shows that the owners of the company live in Pittsburg, and that the company has no personal property in Kentucky, and only maintains an office in form here. The company evidently has not made money, and whether it will ever be able to operate the mine is, under the evidence wholly problematical.

It will be observed that by the terms of the lease the lessee is under no obligation to pay the lessor any rent unless it gets out some mineral. While the company has for a number of years paid a nominal rental of $20 a year, this payment was wholly voluntary on its part. It was not required by the terms of the lease to pay anything after it ceased to work the mines, and the amount it should pay when it did not work the mine, is not determined in any way by anything in the lease. By the terms of the lease it is to continue for fifty years from its date or as long as asphalt or other minerals are found in paying quantities on the land. When this suit was brought the company had done nothing on the land since the year

1902. It had then removed all its machinery and property from the premises, and if it can hold the property for seven years without doing anything on it, we see no reason it may not hold it for twice or three times seven. We have held in several cases that such leases are based on an implied cosideration that the lessee will in a reasonable time begin operations on the property and conduct the operations with reasonable diligence. (Berry v. Frizbie, 120 Ky. 337, Monarch Oil Co. v. Richardson, 124 Ky. 602; Flannagan v. Marsh, 115 S. W., 424; Young v. McIllhenny, 116 S. W. 730.)

We see no reason why this principle should not be applied here; for otherwise the lessor may get no rent for his property and be prevented indefinitely from enjoying it. That was certainly not the contemplation of the parties in making the contract, and we think the court properly cancelled the lease.

Judgment affirmed.