## Hodges v. Mud Branch Oil & Gas Co.

(Decided Oct. 15, 1937.)

J. E. WISE and J. W. HODGES for appellant.

DOWLING & BAIRD, LARIMORE & CRADDOCK and CHARLES R. RICHARDSON for appellee.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

Appellant, Jesse Hodges, who was the plaintiff below, brought this suit to secure the cancellation of an oil and gas lease covering a 70-acre tract of land owned by him in Hart county. The lease was executed in October, 1930. It was provided therein that if no well was commenced within six months the lease should terminate. It was also provided that the lease should continue as long "as oil or gas or either of them is produced from said land by the lessee." By a subsequent agreement, it was provided that the drilling of a well within the time prescribed on any of the property covered within a block containing about 1,500 acres should be a compliance with the six months' provision in regard to commencing the operation. In December, 1931, a second agreement was entered into extending the lease for twelve months in consideration of the sinking of a well on the land in question during that period.

In July or August, 1932, appellee, Mud Branch Oil & Gas Company, entered on appellant's land and drilled one well which produced gas and has a small showing of oil. It is agreed that the gas is in paying quan-

tities if a market for it could be secured. It is further agreed that the appellee has endeavored to procure a market for the gas, but has been unable to do so, and none is now being sold from the premises, and no further development of appellant's 70-acre tract has been attempted. On April 25, 1935, appellant gave formal written notice to the appellee that he desired to have his lease fully developed, and, in the event of a failure so to do, he would proceed with a suit to compel development or cancel the lease. It is not contended by appellant that oil or gas is being drained from his property. He plants himself squarely on the proposition that the failure of the appellee to develop the lease is in effect an abandonment thereof, and the lease should be canceled. The chancellor refused to cancel the lease on the ground that the appellee had not yet had a reasonable time, under all the circumstances, within which to develop the lease. Appellee, on the other hand, has introduced evidence to the effect that, since gas and not oil was discovered, one well is a complete development of the property and no further drilling is anticipated.

It is shown that the property of appellant is probably on the northerly edge of a ''line formation'' which contains oil in its center for a width of from 1,200 to 2,000 feet, with salt water on the southern side and gas on the northern side. A large number of wells have been drilled in the vicinity, and an examination of the plat filed in the record demonstrates that there is a distinct strip within which oil may be discovered. It is likewise shown that, generally speaking, although this is not universally true, wells in the same field of an elevation similar to the one drilled on appellant's property are producing gas, while those but a few feet lower contain oil in paying quantities. In several instances there are oil wells in the same field of a higher elevation than appellant's gas well, but none of these wells seem to be close to appellant's property. All of the witnesses testifying on the subject for appellee express an opinion that there is nothing to be found on appellant's property except gas. No witness expresses an opinion that there is oil on the property. It is likewise asserted that the drilling of other gas wells would tend to lessen the pressure throughout the entire field, and, in the absence of a market for the gas, would do nobody any good. In view of the testimony for the appellee, it is apparent that it has no immediate intention of drill-

ing further on appellant's property unless a market for the gas can be secured, and possibly not even then. It is further established that there is no market in prospect. If, as appellee's witnesses state, it has no intention of drilling further and considers further drilling not only to be unnecessary but unwise, appellant is left in the anomalous situation of having a gas well on his premises which nobody wants and at the same time he is prohibited from prospecting for oil, which everyone does want, because of the claimed complete development of his property. We gather from the briefs that the chancellor was of the opinion that the property had not been fully developed, but that appellee had not yet had a reasonable time within which to complete its operations. If, as appellee's witnesses expressly state, there is no intention by the lessee to drill further, then to all intents and purposes, the lease has been abandoned as effectively as though there had been no development for ten years instead of three. The lapse of time is merely evidence of abandonment. Other facts may show it too.

In Lawrence Oil Corporation v. Metcalfe, 241 Ky. 353, 360, 43 S. W. (2d) 986, 989, we said:

"It is well settled that a neglected portion of a lease may be cancelled, preserving all the rights of the lessee in the developed portion, and such cancellation is a proper, although not the exclusive, remedy. Summers, Oil & Gas, p. 530; Implied Covenants in Oil & Gas Leases, Merrill, c. 7; White v. Green River Gas Co. (C. C. A.) 8 F. (2d) 261; 40 C. J. p. 1093; Carroll Gas & Oil Co. v. Skaggs, 231 Ky. 284, 21 S. W. (2d) 445; Highfield Co. v. Kirk, 248 Pa. 19, 93 A. 815; Austin v. Ohio Fuel Co., 218 Ky. 310, 291 S. W. 386; Dinsmoor v. Combs, 177 Ky. 740, 198 S. W. 58."

Appellant made formal written demand for the further development of his property and has been ignored. Certainly he should not be required to await indefinitely the procuring of a market or the whims of appellee in further prospecting for oil. On the other hand, appellee is entitled to retain that portion of the leased property which it has developed. There is nothing before us from which we can ascertain just what acreage should be set off to appellee, but it is patently unfair under the circumstances to stop all further operations on the property. If the parties are unable to agree, the chancellor may hear proof and determine the acreage

that should be retained under the lease and how much of the property should be freed therefrom. White **v.** Green River Gas Co. (C. C. A. 6) 8 F. (2d) 261.

Judgment reversed.