## MAGNOLIA PETROLEUM CO. v. ROCKHOLD.

No. 29758. June 15, 1943.

*138 P. 2d 809.*

Wallace Hawkins, B. B. Blakeney, W. R. Wallace, and B. B. Blakeney, Jr., all of Oklahoma City, for plaintiff in error.

Hatcher & Bond, of Chickasha, for defendant in error.

ARNOLD, J. This action was commenced on April 19, 1938, by E. A. Rockhold, hereinafter referred to as plaintiff, against Magnolia Petroleum Company, hereinafter referred to as defendant, to cancel two oil and gas mining leases executed on April 6, 1922, and February 9, 1923, respectively.

The plaintiff pleads a breach of the implied covenant to diligently develop and protect from drainage after development within the primary term of the lease. Defendant, by appropriate answer, denied all the allegations made and placed the plaintiff upon proof. The plaintiff replied by way of general denial and, in addition thereto, alleged that the defendant had abandoned all the wells upon the two leaseholds; in this connection he alleged and argues that the gas produced and sold therefrom was so small that abandonment should be adjudged; that said defendant made no attempt, contrary to its duty as a prudent operator, to operate the leaseholds to the mutual benefit of lessor and lessee; he further alleged in this regard that if the court found de-

fendant was operating the remaining wells as a prudent operator should, the rest and residue of said leases had been abandoned by failure to further develop and said leases should be canceled except for only ten acres surrounding each gas well found to be producing in paying quantities.

The action being one of purely equitable cognizance, trial thereof was had to the court.

The evidence of the plaintiff discloses that one of the leases covers the N. W. ¼ of N. W. ¼ of section 11, township 4 north, range 8 west, known as the "B" lease, and that the other covers the E.½ of the N. W. ¼ of said section 11, known as the "A" lease; that within the primary term of said leases five wells were drilled during the years 1925-26-27; three of the wells have been plugged and abandoned; that there are now two wells producing gas, one of which is located on the "A" lease and the other on the "B" lease; that these two wells were deepened in 1935; that since 1927 no new wells have been drilled on either of said leases; that the defendant had failed to develop all of the known producing sands in that area; that during the year immediately preceding the filing of this action the amount of gas taken and sold from the two remaining producing wells was very small and the royalty checks received by the plaintiff were almost negligible; that the wells on the lease involved produced gas only; that one well to each 40 acres, as to each producing sand, was considered reasonable development in that area; that the market for gas in that area was rather limited; that the purchasing company attempted to take gas proportionately from each lease; that a much greater volume of gas was taken from an adjoining lease than from the two leases involved herein; that the prospects of obtaining gas in paying quantities by drilling wells to other producing horizons are good in each instance. The evidence of the plaintiff further shows that wells on adjoining lands had been drilled to deeper sands and that as a result there had probably

been some drainage from the leases in controversy here occasioned thereby. The evidence does not disclose the probable cost of drilling offset wells, and wells to the deeper sands, nor what would be the probable benefit which would result to the plaintiff and defendant from such operations. There is evidence that the plaintiff gave notice and requested that additional wells be drilled, but the defendant failed and refused to drill any additional wells and advised plaintiff by its employee in charge of that area that additional wells would not be profitable, and that the company did not intend to drill any additional wells. The defendant moved for judgment on the evidence of the plaintiff and stood upon its motion; the court thereupon rendered judgment in favor of the plaintiff canceling said leases except for a 10-acre tract around each of the two wells from which the defendant was producing gas. This appeal is from said judgment.

The defendant contends that the evidence of plaintiff is insufficient to show either breach of implied covenant to diligently and prudently develop or breach of implied covenant to protect from drainage; that the burden is on the plaintiff to show probability of recovery to such extent as to be profitable to lessee, taking into consideration costs of drilling, equipping, and operating other wells and a reasonable profit on the outlay. It says a lessee is not obliged by implication to drill additional or offset wells except upon such showing; that a showing that some drainage is occurring and that recovery from additional wells would be probable and prevent drainage is not sufficient.

It is true that ordinarily in this jurisdiction the test for determining whether or not there has been a breach of the implied covenants to drill additional wells and to protect the leased premises from drainage by wells on adjoining lands is: "the ordinary prudent operator test." It is required under this rule that the lessee do whatever, under the circumstances, would be reasonably expected of an operator of ordinary prudence, having due regard for the interest of both lessor and lessee, but neither is the arbiter of the extent to which, nor the diligence with which, the operations shall proceed. The burden of proving breach of the implied covenants is usually upon the plaintiff. Ramsey Petroleum Co. v. Davis, 184 Okla. 155, 85 P. 2d 427; Wilcox v. Ryndak, 174 Okla. 24, 49 P. 2d 733; Mercer v. American Oil & Refining Co., 173 Okla. 515, 49 P. 2d 101. The evidence of the plaintiff was not sufficient to sustain the burden resting upon him under the rule of the foregoing cases.

This case was tried and judgment entered and this appeal lodged before modification of the rule as to burden of proof by recognition of an exception in cases where there is unreasonable delay in developing. Where production is obtained during the primary term of a lease, and it is disclosed that the lessee has failed and refused to fully develop the leasehold within a reasonable length of time and there has been unreasonable delay in development, a prima facie case is made in an action by the lessor to cancel the undeveloped portions thereof, and the burden is upon the defendant lessee to show that the lease has been developed in the manner reasonably to be expected of an operator of ordinary prudence. See Doss Oil Royalty Co. v. Texas Co., No. 29792, decided by this court on April 27, 1943, 192 Okla. 359, 137 P. 2d 934.

In our opinion, the evidence of the plaintiff in this case shows unreasonable delay in the development of the leaseholds and made a prima facie case of breach of the implied covenants of the lease to diligently and prudently develop.

Under the rule announced in Doss Oil Royalty Co. v. Texas Co., supra, we think that the plaintiff's evidence was sufficient to withstand demurrer. The prima facie case made by plaintiff's testimony, though insufficient to meet the prudent operator test, required the defendant to show that it had developed diligently and had reasonably protected

the leaseholds against drainage as was its duty to do; this burden was not sustained by it, but in view of our modification of the rule as to the burden of proof upon showing of long and unreasonable delay in further development since the trial of this cause, the judgment should be and is vacated and the cause remanded for further proceedings in accordance with the views herein expressed.

CORN, C. J., and OSBORN, HURST, and DAVISON, JJ., concur. GIBSON, V. C. J., and BAYLESS ·and WELCH, JJ., dissent. I am authorized to say that RILEY, J., concurs in the rules of law stated, but is of the opinion that the judgment should be affirmed.