ELLIS et al. v. BROWN.

BROWN v. ELLIS et al.

Nos. 10823, 10824.

United States Court of Appeals
Sixth Circuit.

Oct. 21, 1949.

George S. Wilson, Jr., Owensboro, Ky. (George S. Wilson, Jr., Wilson & Wilson, Owensboro, Ky., on the brief), for appellants and cross-appellees.

Hubert Meredith, Owensboro, Ky. (Hubert Meredith, Owensboro, Ky., on the brief), for appellee and cross-appellant.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This appeal and cross-appeal attack a judgment of the District Court holding appellee to be the owner of one-eighth of the seven-eighths working interest in certain oil and gas leases covering real property located in Daviess County, Kentucky. The court gave judgment for one-eighth of the seven-eighths of the value of all oil produced from the leaseholds in question, less one-eighth of the reasonable cost of production, ordered an accounting, and also gave judgment for payment to appellee of one-eighth of seven-eighths of the value of all oil produced from such leases in the future less one-eighth of the cost. The cross-appeal is instituted because of the District Court's refusal to enter judgment for appellee as to all leases acquired by appellant Ellis or by Ellis and associates covering land in Daviess County subsequent to January 23, 1946, and also as to certain land in Daviess County owned by Ellis in fee simple.

A contract was entered into between appellee and appellant Ellis on January 23, 1946, under which appellee agreed to and did assign to Ellis a seven-eighths interest in the working interest in 17 oil leases. The contract contemplated that other leases in Daviess County should also be secured and worked by the parties. On May 20, 1946, appellee obtained a valuable lease called the Shipp lease, which was placed in the name of Ellis. Under the agreement Ellis was obligated, entirely at his own expense, to sink the first well on the property covered by the Shipp lease. Work was begun on June 13, 1946, at a location selected by appellee, and was completed on August 4, 1946. The well was drilled to a depth of over 1,900 feet, costing appellants over $8,000, and proved non-productive, as it ran into sulphur water at the Mississippi line. Appellee contended that the well could have been plugged and shot and made a producing well; but when appellants offered to convey the well to him for that purpose, together with 40 acres additional, he refused the offer on the ground that he was not financially able to shoot the well. Appellee and Ellis dis-

agreed about the location of the second well, and the site was picked by Ellis and Morrison, co-appellant herein and assignee of a one-eighth interest in the leases. Appellee thereupon stated that he "didn't want any part of it." Shortly afterward he left Daviess County and later left Kentucky to work in Michigan. He paid no share of the expense at any time. In February or March, 1947, appellee visited Ellis and asked for information about the project for the purpose of making out his income tax return. He was told by Ellis that he had no interest in the property, and this litigation ensued.

Appellants contend that appellee totally abandoned the enterprise and that under the doctrine announced in United Mining Co. v. Morton, 174 Ky. 366, 192 S.W. 79, appellee must be denied recovery.

Abandonment is the relinquishment of a right or of property with the intention of not reclaiming it or reassuming its ownership or enjoyment. In Kentucky, except in the case of a perfect legal title to a corporeal hereditament, every right or interest in, title to, or ownership of property may be lost by abandonment; and this rule applies to mining rights and privileges. United Mining Co. v. Morton, 174 Ky. 366, page 377, 192 S.W. 79.

We cannot agree, however, that the decision in the United Mining Co. case requires reversal of the judgment herein. The District Court found correctly that the contract of January 23, 1946, established a partnership. A mining partnership was also the subject of consideration in the cited case. There Morton and Langenbach formed a partnership which owned certain mining leases. Morton expressly contracted to spend his whole time on the work of the partnership. After two years he ceased completely to work in the partnership business, failed to contribute to partnership expenses, and left the state. For five years Morton failed to apprise his partner of his whereabouts, leaving Langenbach to bear the entire burden, financial and otherwise, of operating a zinc mine. The principal legal question was whether Langenbach was justified in surrendering the lease under which the mine had been operated by him at a substantial loss, and the court held that Morton had abandoned the partnership business, including his interest in the lease, and that the surrender by Langenbach was valid.

Here the principal consideration for the contract differed materially from that in United Mining Co. v. Morton, and sheds light on the question whether appellee intended, by his declaration that he wanted no part of it, to renounce his interest in the leases. If he did not so intend, there is no abandonment. Cf. Trammel Creek Oil & Gas Co. v. Sarver, 197 Ky. 594, 247 S.W. 753. Appellee made no agreement to spend his full time, or any part thereof, in working on the contemplated oil wells. The consideration for the contract was the assignment by appellee, immediately given, of the major part of his seven-eighths interest in 17 leases. Under the contract, the responsibility of both financing and directing the drilling of the first Shipp well was entirely upon Ellis. As to the other wells that were contemplated, since appellee had only a minor interest he could not direct the location nor the drilling. He disagreed emphatically with the location of the second well, and he went away from Daviess County not only because of his financial needs, but also because he felt that he was "just causing confusion" and the best thing for him was "to stay away as much as possible to not interfere with the operation." But he kept in touch with the project and asked for and received information about it from appellants. The record contains a letter signed by appellants' agent, Epperson, dated November 8, 1946, giving appellee information as to the drilling of an additional well under the Shipp lease, and as to the proposed location of another well. This letter strongly indicates that appellee was still associated with the enterprise long after he left Daviess County.

Appellee contends that since his interest was an interest in real property it could not be abandoned except by the execution of a written instrument. This is unquestionably true with reference to a fee simple. Carlson v. Asher Coal Min-

ing Co., 6 Cir., 172 F.2d 243. But we are cited to no Kentucky decision holding that the same rule applies to an interest in a short-term oil lease in which, as here, the principal consideration is royalty rather than payment in advance of severance of the minerals. Cf. Kennedy v. Hicks, 180 Ky. 562, 203 S.W. 318.

In Commonwealth v. Elkhorn Piney Coal Mining Co., 241 Ky. 245, 43 S.W.2d 684, an exhaustive consideration is given to leasehold estates. In that case they were regarded as real estate for the purposes of taxation, and many cases are cited to the effect that leases in Kentucky covering mineral rights are governed in important respects by the law of real property. In Trimble v. Kentucky River Coal Corp., 235 Ky. 301, 306, 31 S.W.2d 367, 369, the Court of Appeals of Kentucky declared that the state has adopted the "Corporeal Rule" under which a purchaser of gas, coal or other mineral rights acquires not a mere right to enter upon the property and possess the minerals, but acquires real estate in fee simple. There an actual conveyance of mineral rights was involved, but among the many cases cited supporting this proposition are several which hold a lease of oil rights to be a conveyance of an interest in land. Cf. Wolfe County v. Beckett, 127 Ky. 252, 105 S.W. 447, 17 L.R.A.,N.S., 688; Beckett-Iseman Oil Co. v. Backer, 165 Ky. 818, 178 S.W. 1084. In Wakenva Coal Co., Inc. v. Johnson, 234 Ky. 558, 571, 28 S.W.2d 737, certain coal leases were held to be "real estate." Cf. Kennedy v. Hicks, supra. The general statements of the Trimble and Commonwealth cases, supra, apparently support the proposition that an interest in an oil lease cannot be abandoned by parol declarations. But a long line of Kentucky cases holds directly to the contrary. Neither a formal surrender of an oil and gas lease nor a release thereof is necessary to effect abandonment, Justice v. Burgess, 244 Ky. 774, 52 S.W.2d 720, which may be shown by the conduct of the parties, Seaboard Oil Co. v. Commonwealth, 193 Ky. 629, 237 S.W. 48, or may be established by circumstances, like any other fact. To the same effect are Hails v. Johnson & Stein, 204 Ky. 94, 263 S.W. 679; American Wholesale Corp. v. F. & S. Oil & Gas Co., 242 Ky. 356, 46 S.W.2d 498; Hodges v. Mud Branch Oil & Gas Co., 270 Ky. 206, 109 S.W.2d 576; Wilson v. Wilson, 280 Ky. 461, 133 S.W.2d 722; Warfield Natural Gas Co. v. Ward, 286 Ky. 73, 149 S.W.2d 705.

■ In Rice v. Rice, 243 Ky. 837, 50 S.W.2d 26, the court held that abandonment of a partnership interest in oil leases could be shown by the actions, conduct, or declarations of the parties. This is a recent statement of applicable Kentucky law in a case similar to this, and is binding on this court.

■ However, we think the District Court correctly decided that appellee's declarations and his absenting himself from the project did not amount to abandonment. Mere absence from and nonuser of property are not sufficient evidence of intent to abandon. Rice v. Rice supra, 243 Ky. 837, 846, 50 S.W.2d 26. Here appellee's statements are evidence of dissatisfaction and unwillingness to take part in the actual planning and drilling because the appellants had disregarded his wishes as to the placing of the second well, and since they had the major interest appellee's views could not be given effect. Appellee's statements indicate no intention to relinquish his property right. Appellants' action in writing to appellee and giving him information as to the wells strongly militates against the contention that the District Court should be reversed on this finding of fact, by which we are bound unless it is clearly erroneous.

■ Due to appellee's failure to pay rentals, Ellis was justified in permitting certain leases to lapse. United Mining Co. v. Morton, supra. But as to those which did not lapse, appellee's rights are still in existence and the judgment on this part of the case must be affirmed.

■ Appellee in turn attacks and appeals from that portion of the judgment which denied him recovery on land owned by Ellis individually and on leases secured by Ellis or by Ellis and associates without assistance from appellee within territory described in the contract. This part of the

judgment was entirely correct. While the contract entered into on January 23, 1946, in addition to the 17 leases specifically described covers "other leases which may be acquired" in certain specified sections in Daviess County, Kentucky; and while appellant Ellis not only owned real property in fee but also secured leases or interests therein on property situated within the territorial description of the contract, it would be a strained construction to hold that the contract covers any lease not acquired by the partnership. The contract does not specify by whom the leases may be acquired, and in this sense is ambiguous. There was clear testimony to the effect that the parties understood it was to cover only the leases secured by appellee for Ellis, and not those which the appellee had no share in obtaining. Under the familiar rule as to the use of parol testimony to explain ambiguous contracts, this evidence was admissible and supports the judgment.

The findings of fact of the District Court are supported by substantial evidence, and the judgment is affirmed.