**POHLEMANN et al. v. STEPHENS PE-
TROLEUM CO.**

Civ. 4917.

United States District Court
W. D. Oklahoma.

Aug. 27, 1951.

876

Melton, McElroy & Vaughn, Chickasha, Okl., for the plaintiff.

Mosteller, McElroy & Fellers, Oklahoma City, Okl., for the defendant.

WALLACE, District Judge.

This action was commenced in the District Court of Caddo County, State of Oklahoma, to have an oil and gas lease cancelled of record and to have the lease removed as a cloud upon plaintiffs' title. Plaintiffs are residents and citizens of the State of Oklahoma, and the defendant, Stephens Petroleum Company, is a corporation organized under the laws of Delaware and duly authorized to do business in the State of Oklahoma. The cause was removed to the United States District Court for the Western District of Oklahoma upon the petition for removal by the defendant as provided for in 28 U.S.C.A. § 1441. The sum or value in controversy exceeds, exclusive of interest and costs, the amount of $3,000.00.

On the 3rd day of August, 1940, one of the plaintiffs, Frank Pohlemann, a single person, owned the fee simple title to the surface and minerals of the land described as follows: NW¼ of Section 33, Township 6 North, Range 10 West, Caddo County, Oklahoma. This same day plaintiff and one Ray Stephens entered into and executed an oil and gas lease covering the above described land. The lease was duly recorded and the defendant, Stephens

Petroleum Company, acquired said leasehold estate by assignment.

The lease was a standard Producers 88 form which provided in part: "It is agreed that this lease shall remain in force for a term of five (5) years from this date, and as long thereafter as oil or gas or either of them is produced from said land by lessee." The tract of land covered by the lease is located on the west edge of what is commonly known as the "West Cement Field" in Caddo County, Oklahoma. There are a number of known producing horizons in this field, among which are the Noble-Olson sand formation found at an approximate depth of 3,360 feet and the Medrano sand formation found at a depth of approximately 6,000 feet.

By the rights granted under the lease the Stephens Petroleum Company, hereinafter referred to as defendant, entered upon the premises and drilled the first Pohlemann well on a ten acre tract of this land, being the NE¼ of the NE¼ of the NW¼. This well was completed in the Noble-Olson formation on June 4, 1941, at a total depth of 3,369 feet. Initial production from the Pohlemann #1 was 14.15 barrels per day, but the production declined rapidly. In view of the rapid decline and small production, defendant began operations on September 6, 1943, to deepen this well, and it was completed on November 12, 1943, in the Medrano formation at a total depth of 6,012 feet. The deepened well was a good producer, having an initial production of 186 barrels per day, and has continued to produce in commercial quantities since said time. On September 5, 1947, all the production from the Medrano sand was unitized and became the "West Cement Medrano Unit." Under the unitization order 60 acres (being the NE¼ of the NW¼ and the NE¼ of the NW¼ of the NW¼ and the NE¼ of the SE¼ of the NW¼) of the 160 acres in the Pohlemann tract were included in the Medrano Unit. It was considered that this part of the plaintiffs' land included the outer extremities of the Medrano producing horizon.

The second well, the Pohlemann #2, drilled to the Noble-Olson formation, bottoming at 3,630 feet, was a dry hole in said formation and was abandoned on January 3, 1949. After the Pohlemann #2 proved to be a dry hole, plaintiffs corresponded with defendant requesting that other wells be drilled upon their land. No further drilling was commenced, however, and there has been no drilling on the Pohlemann land since the second well was abandoned as a dry hole. Again on November 26, 1949, plaintiffs contacted defendant by letter and notified the defendant to further develop the lease or they would consider the lease abandoned and would seek cancellation or forfeiture of the entire lease, with the exception of the Medrano formation under the 60 acres included in the Medrano Unit. Plaintiffs seek equitable relief to have the lease cancelled as to all formations, with the exception of the Medrano sand under the 60 acres within the Medrano Unit which, plaintiffs concede, is not subject to cancellation or forfeiture under the circumstances and for the purpose of this litigation.

The plaintiffs in this case base their request for cancellation of the lease upon two grounds, abandonment and breach of the covenant of further development. Although the two theories are closely interwoven and may involve many of the same considerations, there is a distinction in that true abandonment requires an intention to abandon coupled with relinquishment of the property, whereas, forfeiture does not require an intent to release the premises but rather is a release based upon the breach of an express or an implied covenant. Although many courts have directly or impliedly held that an intent to abandon is all that is necessary to constitute abandonment and that such intent could be manifested by the lessee's acts or conduct, the Oklahoma Supreme Court in the case of Doss Oil Royalty Co. v. Texas Co., 192 Okl. 359, 137 P.2d 934, reviewed many prior Oklahoma cases involving different factual situations and stated that true abandonment is applicable only in those cases where there is an actual intent to abandon accompanied by physical relinquishment. This theory of abandonment which requires not only an intent to abandon but

also the physical relinquishment of the property was adhered to in the late case of Sadler et al. v. Public National Bank and Trust Co. of New York et al., 10 Cir., 172 F.2d 870. In that case cancellation of the oil and gas lease was denied on the theory of abandonment where the lessee had not surrendered physical possession of the leasehold even though 30 years had elapsed since the drilling of the last well and the lessee was unwilling to further develop until other arrangements were made and more leases on surrounding territory acquired. In the cases of Wing v. Edwards et al., 175 Okl. 642, 54 P.2d 351, and Newman v. Replogle et al., 139 Okl. 86, 281 P. 272, the court inferred an intent to abandon from the lessee's conduct despite an expressed intent to retain the lease. Cancellation of the leases was decreed where during the primary term there had been some development but an unreasonable length of time had elapsed without further development. The two preceding cases were cited in the Doss Oil Royalty Co. v. Texas Co., supra, wherein the court stated: "After careful consideration we have concluded that, while relief has been properly granted in such cases, we have given incorrect reasons for so doing. In such cases, it is apparent that there has been no real intention on the part of the lessees to abandon the undeveloped portions of the leases. [192 Okl. 359, 137 P.2d 938.]"

In the case at bar, plaintiffs have wholly failed to prove an intent to abandon on the part of the defendant nor was there any proof of physical relinquishment of the leasehold. On the other hand, defendant testified that there was no intention to abandon the lease, and such testimony is competent. Blackwell Oil and Gas Co. et al. v. Whited, 81 Okl. 45, 196 P. 688, 692; Carter Oil Co. v. Mitchell et al., 10 Cir., 100 F.2d 945.

Plaintiffs second contention is that the express and implied covenants of the lease have been breached for failure to diligently develop. The lease contained no forfeiture clause nor was there a provision for a certain number of wells to be drilled. The only consideration meriting attention is whether or not there has been a breach of the implied covenant of further development for failure on the part of the lessees to drill additional wells after demand by the plaintiffs.

It is a well settled principle of law that some type of notice for further development must be given by the lessor before the court will consider the alleged breach of the implied covenant. It is unnecessary to discuss what constitutes sufficient notice and request for the fulfillment of lessee's obligation to drill additional wells, for it is conceded by the defendant that specific demand was made by a letter dated November 26, 1949, asking for further development and that cancellation or forfeiture would be sought for a failure to commence another well. See Colpitt v. Tull et al., Okl., 228 P.2d 1000, Hudspeth et al. v. Schmelzer et al., 182 Okl. 416, 77 P.2d 1123; Doss Oil Royalty Co. v. Texas Co., supra.

The primary question to decide is whether or not there has been a breach of the implied convenant to further develop. In Fox Petroleum Co. et al. v. Booker et al., 123 Okl. 276, 253 P. 33, it was held: "Neither party to an oil and gas lease is the arbiter of the extent to which, or the diligence with which, operation thereunder shall proceed, but both are bound by the standard of what, in the circumstances, would be reasonably expected of an operator of ordinary prudence, having due regard for the interest of both."

The "reasonably prudent operator test" has been applied in many cases. Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801; Robinson v. Miracle, 146 Okl. 31, 293 P. 211; Mercer et al. v. American Oil & Refining Co. et al., 173 Okl. 515, 49 P.2d 101; Ramsey Petroleum Corporation v. Davis et al., 184 Okl. 155, 85 P.2d 427; Carter Oil Co. v. Mitchell et al., supra.

The case of Ramsey Petroleum Corporation v. Davis, supra, also held that the burden of proving the breach of the implied covenants is upon the lessor. See also Carter Oil Co. v. Mitchell, supra. This rule as to burden of proof was qualified in a later decision, Doss Oil Royalty Co. v. Texas Co., supra, wherein

the court said: "The broad rule as to the burden of proof stated in Ramsey Petroleum Co. v. Davis, above, is not to be applied after the lapse of an unreasonable length of time."

See also Magnolia Petroleum Co. v. Rockhold, 192 Okl. 628, 138 P.2d 809; McKenna et al. v. Nichlos et al., 193 Okl. 526, 145 P.2d 957; Colpitt v. Tull, supra.

■ Cancellation of a lease is purely of equitable cognizance, and it is the duty of the trial court to determine under all of the facts and circumstances surrounding the case whether substantial justice to both parties can be accomplished by a decree of cancellation. Ferguson et al. v. Gulf Oil Corp. et al., 192 Okl. 355, 137 P.2d 940; McKenna v. Nichlos, supra; Magnolia Petroleum Co. v. Rockhold, supra; Doss Oil Royalty Co. v. Texas Co., supra.

■ The plaintiffs' evidence was completely void of any proof that a reasonably prudent operator would have drilled additional wells on the Pohlemann lease at this time. There was no evidence of drainage, and it is admitted by the geologist who testified for plaintiffs that there were no wells on adjoining land which would tend to drain any oil in substantial quantities from plaintiffs' land. The evidence of plaintiffs consisted mostly of opinion evidence that deeper sands underlying the Pohlemann lease might be productive.

■ Since plaintiffs have not proved that a reasonably prudent operator would have further developed the undeveloped part of their land, the court of equity would ordinarily deny cancellation, but one other thing must be considered. It is the rule in Oklahoma that where an unreasonable delay has occurred after development during the primary term, the burden is no longer upon plaintiff to prove that a reasonably prudent operator would have drilled. In Magnolia Petroleum Co. v. Rockhold, supra, the court stated: "Where production is obtained during the primary term * * * and there has been unreasonable delay in development a prima facie case is made in an action by the lessor to cancel the undeveloped portions thereof and *the burden*

*is upon the defendant lessee to show that the lease has been developed in the manner reasonably to be expected of an operator of ordinary prudence."* (Italics ours.) [192 Okl. 620, 138 P.2d 810.] Again in McKenna v. Nichlos, supra;

"In other words after the passage of a reasonable length of time the duty to drill additional wells becomes progressively greater, and the standard of the prudent operator becomes progressively of less importance in determining whether such duty exists.

"* * * the fact that defendants have acted as prudent operators * * * is not conclusive of the question of whether they have breached the implied convenant for further development. It is merely a circumstance to be considered together with the other circumstances of the case. [193 Okl. 526, 145 P.2d 960.]"
See also Colpitt v. Tull, supra.

In considering an "unreasonable" length of time the time element itself is very important, but there are other considerations which enter in depending on the circumstances of each case. Doss Oil Royalty Co. v. Texas Co., supra. In the case before the court it appears that approximately one and a half years have elapsed between the drilling of the last well and the commencement of the suit. The following facts are also pertinent:

(1) the Pohlemann tract is located on the edge of the West Cement Field;

(2) the nearby wells to the North and East producing from the Noble-Olson formation are small producers;

(3) the first Pohlemann well to the Noble-Olson sand was a very small producer and therefore was deepened to the Medrano formation;

(4) the second Pohlemann well was a dry hole;

(5) there are no producing wells adjoining the Pohlemann tract to the South or West;

(6) the portion of plaintiffs' land within the "West Cement Medrano Unit" included all that was practical to include as was found by the Oklahoma Corporation Commission in the unitization order

under 52 Oklahoma Statutes Supp. §§ 286.1 to 286.17;

(7) testimony by the defendant that all available well logs and geological information are constantly being studied to determine the feasibility of drilling in the near future;

(8) reliance by the defendant upon having the Pohlemann lease as well as others in its effort to cooperate with other companies in obtaining a deep test within the West Cement Field;

(9) the fact that defendant has been seeking an allocation for steel to make a test to 10,000 feet within the West Cement Field.

In view of all the facts and circumstances of this case, and having due regard for both the interests of the lessor and lessee, it would be inequitable at this time to grant cancellation of any part of the Pohlemann lease.

Counsel are directed to submit a journal entry in conformity with this opinion within ten days from this date.