**H. B. CAMERON et al., Appellants,**

**v.**

**Simon LEBOW et al., Appellees.**

Court of Appeals of Kentucky.

May 6, 1960.

Rehearing Denied Oct. 14, 1960.

Sandidge & Sandidge, Owensboro, for appellants.

Byron, Sandidge, Holbrook & Craig, Owensboro, for appellees.

CLAY, Commissioner.

This is a suit for a declaration of rights between parties having conflicting lease interests in oil and gas underlying a 55 acre tract in Daviess County. The trial court sustained a motion to dismiss the complaint as amended. We have pointed out in the past that this is not the best method of disposing of a declaratory judgment action if the complaint presents a justiciable controversy. Hedden v. Hedden, Ky., 312 S.W.2d 891.

It is apparent the judgment decided an issue of law and in effect was a declaration of rights unfavorable to appellants. We will treat the judgment as one entered on the pleadings under CR 12.03, and will determine whether or not appellees were entitled to judgment on the allegations of the complaint as amended.

One Shaffer owned an oil and gas lease on 160 acres of land. In 1939 appellants (hereinafter designated "assignee") were assigned a *part* of this leasehold covering 55 acres of the original 160 acre tract.

The terms of the lease on the remaining 105 acres have been complied with. Wells have been drilled thereon and are producing oil. On the 55 acre tract a dry hole was drilled in 1939, but there has been no further development activity on that portion of the leasehold by assignee. Assignee has been given no notice by the lessors demanding development of this assigned 55 acre tract.

Assuming that assignee's leasehold interest in the 55 acres had been forfeited or abandoned, the lessors in 1956 executed a new lease thereon to appellees, referred to as a "top" lease. (Since appellees' rights are derived through the lessors, they will hereinafter be referred to as "lessor.") The lessor has retaken possession and assignee seeks as incidental relief a decree enjoining this alleged trespass.

The parties have practiced this case on the issue of whether or not the assignee of a part of an oil and gas lease has breached an implied covenant to develop the assigned portion by failure to produce either oil or gas thereon for several years

(17 had elapsed when the "top" lease was executed; 19 at the time suit was filed.) The principal controversy has raged over the nature of *the implied obligation* of the assignee and whether or not, before his interest may be terminated, he is entitled to *notice and demand to develop* from the lessor.

Before reaching the rights and duties of an assignee, as such, it is necessary to examine the relationship between the lessor and lessee of a mineral lease. The development of the implied covenant theory in the oil and gas law of Kentucky (as elsewhere) is somewhat disjointed and elusive. It apparently originated in Berry v. Frisbie, 120 Ky. 337, 86 S.W. 558, which, as a matter of fact, simply involved the construction of a contract and the only thing the court implied was what the parties intended.

■ That decision was followed by our leading case of Monarch Oil, Gas & Coal Co. v. Richardson, 124 Ky. 602, 99 S.W. 668. It was there held that even though a mineral lease provided for the payment of a nominal rental if nothing was produced on the property, there was an *implied obligation* to *commence* development as speedily as possible and the lessor might *have the lease cancelled* (short of the term therein prescribed) if reasonable development. was not forthcoming *after notice to develop*. This principle, which is our basic rule, was applied in Flanagan v. Marsh, 105 S.W. 424, 32 Ky.Law Rep. 184, and Warren Oil & Gas Co. v. Gilliam, 182 Ky. 807, 207 S.W. 698, and has been consistently followed in many other cases.

. The assumed existence of an implied obligation *after notice* to *commence* development has been logically extended to cases where the lessee was producing from the property and the lessor wanted *increased* or *improved* development of the leasehold. Johnson v. Dodson, 227 Ky. 132, 12 S.W.2d 310; Leeper Oil Co. v. Rowland, 239 Ky. 295, 39 S.W.2d 486.

■ The established principle of the foregoing cases is thus summarized in the Johnson case (12 S.W.2d 312):

*"Forfeiture* for *nondevelopment,* or *delay in development,* or for a *failure to reasonably develop,* is highly essential in the business of producing oil, but the law does not favor forfeitures, and none should be allowed without the one claiming the right *shall have first placed the other party on notice* that a forfeiture will be demanded, unless the terms of the lease as to development are carried out." (Our emphasis.)

This then, is our basic rule, which is accurately described as "forfeiture." It is generally followed in other jurisdictions. See Pohlemann v. Stephens Petroleum Co., D.C., 99 F.Supp. 875; Doss Oil Royalty Co. v. Texas Co., 192 Okl. 359, 137 P.2d 934.

Subsequent to the establishment of the basic rule two cases departed from the *requirement of notice,* establishing an exception to the rule. They are Eastern Kentucky Mineral & Timber Co. v. Swann-Day Lumber Co., 148 Ky. 82, 146 S.W. 438, 46 L.R.A.,N.S., 672, and Breckenridge Asphalt Co. v. Richardson, 147 Ky. 834, 146 S.W. 437. (They apparently were decided at the same time.) These cases differ from those previously cited in the essential fact that *no delay rental was provided and the only consideration flowing to the owner was the payment of royalties* which obviously depended upon actual production. In the Eastern Kentucky case (where a "deed" was construed as a lease) it was held there was an implied condition that the grantee of mineral and timber lands should *begin* operations within a reasonable time so that the grantor might receive the prescribed consideration. The Court interpolated this condition into the agreement as conforming with the intention of the parties. (Otherwise the contract would lack mutuality.) It was held that after a lapse of 13 years with no action taken, the grantees had *abandoned* their rights and

*forfeited* their interests in the estate. (This confusion of terms runs throughout the cases, and accounts in large measure for the confusion of controlling principles.)

The Breckenridge Asphalt case applied the same concept where production of an asphalt mine had been *commenced* but had been *discontinued* for several years.

For practical purposes these two cases are obsolete for the reason that modern leases provide other consideration than the payment of royalties, and neither the lack of mutuality theory nor this particular implied covenant theory may be invoked.

A third line of cases, initiating a second exception, constitutes the principal source of compounded confusion in the present controversy. The difficulty is caused because the opinions in those cases indicate the court is drawing upon settled principles, whereas instead the court was introducing a new implied obligation and creating another exception to the basic rule. It was: if the lessee (or assignee) *has operated producing wells* on the leased premises and discontinues operations for an unreasonable time, he loses his interest because he has breached an *implied obligation to continue production*. The cases which invoke this reasoning are American Wholesale Corporation v. F. & S. Oil & Gas Co., 242 Ky. 356, 46 S.W.2d 498; and Tanner v. Reeves, Ky., 249 S.W.2d 526.

These two decisions properly could and perhaps should have been bottomed on the principle of *abandonment,* the intention to abandon being inferred from the circumstances. However, as a throw-back to the older cases, all of which involved different significant fact situations, it was deemed expedient to find a breach of some implied condition. So these two opinions did lip service to *an implied obligation to continue producing from proven wells.* Such a legal theory was not required to reach the same result in view of the earlier case of Hails v. Johnson, 204 Ky. 94, 263 S.W. 679, and was in effect repudiated in the subsequent

case of B. & B. Oil Co. v. Lane, Ky., 249 S.W.2d 705, both of which we will refer to later.

■ Let us now recapitulate the implied obligations of the lessee with respect to development as set forth in the foregoing cases. Those obligations are: (1) where delay rental is provided in the lease, to commence or increase development after notice and demand; (2) where no delay rental is provided, to begin or continue operations within a reasonable time; (3) where productive operation has been commenced, to continue that operation. Ignoring for the moment the matter of assignment, it is obvious in this case the lessor would not be entitled to claim a forfeiture of the leasehold interest in the 55 acre tract on any implied covenant theory recognized in the foregoing cases. This is so because the terms of the lease and the conduct of the lessee do not conform with the prescribed conditions under which forfeiture may be decreed. The terms of the lease fall within the scope of the basic rule and not under the first exception. There having been no production on the 55 acre tract, the second exception does not apply. We cannot logically, as lessor would have us do, apply half of the basic rule and half of the second exception, thereby ignoring the limitations of those two legal theories.

■ There is consequently no authority for adjudging that a lessee, under a lease such as we have before us, has an implied obligation to begin operations on a particular part of the leasehold (where the terms of the lease are being complied with elsewhere on the premises) without notice and demand from the lessor to so proceed. Therefore, the assignment of that part to assignee was not burdened with such an implied obligation of the lessee.

Our next question is, did the assignment create a new implied obligation as between the lessor and the assignee? The lease in this case expressly authorized an assignment in part and provided for the divisibil-

ity of the lease with respect to the payment of delay rentals. The assignment provisions of the lease, however, did not create any special rights in the lessor concerning development of the assigned portion as against the assignee.

It is contended by lessor that a leasehold is divisible and the rights and obligations of the parties may be segregated with respect to an identifiable part of the leased premises. This is true as a general proposition. For example, in an action between the lessor and lessee a court may cancel the lease as to a part of the leasehold for failure to develop that part. Lawrence Oil Corporation v. Metcalfe, 241 Ky. 353, 43 S.W.2d 986; Hodges v. Mud Branch Oil & Gas Co., 270 Ky. 206, 109 S.W.2d 576 (notice to develop required in both cases). Similarly, the assignee's or sublessee's interest in a part of the leasehold may be terminated without affecting the rights of either the lessor or lessee in the other parts. American Wholesale Corporation v. F. & S. Oil & Gas Co., 242 Ky. 356, 46 S.W.2d 498; Smyth v. Koplin, Ky., 294 S.W.2d 525.

On the other hand, it seems obvious and is well recognized that an oil and gas leasehold cannot be divisible for all purposes. It cannot be divisible with regard to the initial development required by its terms. For example, in the lease before us the primary term is fixed at three years, which obviously encompasses the entire leasehold. It is provided that a well shall be commenced on or before the 20th of February 1939, with the privilege of deferring commencement in three month periods upon the payment of rental. Clearly these provisions relate to the entire leasehold and these terms would not be applicable to subsequent divisions of it. Assignment of a segregated portion does not create a separate lease. Berry v. Tide Water Associated Oil Co., 5 Cir., 188 F.2d 820. Thus the lessor could not claim the interest in an assigned part of the lease forfeited because of the failure of the as-

signee to comply on the assigned tract with the initial drilling conditions provided in the lease. The law is rather clear on this point.

It is well recognized that initial production on any part of the land leased constitutes compliance with the requirement that wells be drilled within a specified time, and such performance extends to all parts of the leasehold. Cadillac Oil & Gas Co. v. Harrison, 196 Ky. 290, 244 S.W.2d 669. Payment of royalties from a segregated tract of a leasehold likewise keeps the lease alive as to other tracts. McIntire's Admr. v. Bond, 227 Ky. 607, 13 S.W.2d 772, 64 A.L.R. 630. See also Wilson v. Purnell, etc., 199 Ky. 218, 250 S.W. 850; Martin v. Graf, 289 Ky. 272, 158 S.W.2d 637; Hurst v. Kentucky Oil & Distributing Corp., Ky., 255 S.W.2d 467.

Similarly when a lease authorizes assignment, initial development by the assignee of the part assigned inures to the benefit of the part retained by the lessee and to the entire lease. Fisher v. Crescent Oil Co., Tex.Civ.App., 178 S.W. 905; Duke v. Stewart, Tex.Civ.App., 230 S.W. 485; Meagher v. Uintah Gas Co., 123 Utah 123, 255 P.2d 989; McCammon v. Texas Co., D.C., 137 F.Supp. 256.

By the same token, which is the case before us, production within the primary term by the lessee inures to the benefit of the assignee of a part of the premises and the lease is not separable so as to impose on the assignee an independent obligation to commence drilling on pain of forfeiture under the lease. Berry v. Tide Water Associated Oil Co., 5 Cir., 188 F.2d 820.

It is thus apparent that we cannot properly imply an obligation of the assignee to *initiate* development on the leasehold. That obligation is covered by the express terms of the lease and in the present case has been performed by the assignor. Any express or implied covenant to begin pro-

duction on the leased premises has been satisfied by actual production. Since this performance (by either the lessee or assignee) inures to the benefit of all parts of the leased premises, the assignee cannot be held to have breached an obligation to begin development of the leasehold.

 Can the assignee then retain his rights in part of the lease indefinitely, simply relying on the original lessee's production to keep alive all interests in the entire leasehold? The answer is no. It has been decided, and assignee admits, that there is an implied obligation on the assignee reasonably to develop the assigned part upon certain conditions. It is clear, however, that any development of the assigned part, when there are established producing wells elsewhere on the leased premises, constitutes *further development of the leasehold.* Our basic rule then becomes operative. Applying it to the assignee, the implied obligation to develop *is conditioned upon the lessor's giving notice and demanding production.*

To avoid the notice requirement, lessor relies heavily upon Cosden Oil Co. v. Scarborough, 5 Cir., 55 F.2d 634. This statement was made in that case, at page 638:

. " * * * the contract is severable, imposing upon the holder of each segregated part the obligation to develop that part without reference to the others."

We have already recognized that to be a sound general statement of the law. Our trouble comes when we undertake to determine the nature of the obligation. Is it an unqualified obligation, or is it an obligation conditioned upon notice being given by the lessor? Because of the Texas law involved and the nature of the proceedings, the Cosden case is not of controlling significance. However, we do find in that opinion this pertinent language, at page 638:

"That is, we find that an assignee, after production of oil has terminated the obligation to pay rentals and has fixed in the original lessee and his assigns a determinable fee, stands as to the tract that he owns in the same position with reference to due diligence as his assignor stands to the tract retained, obligated to the *same extent and no more,* to do *further* development." (Our emphasis.)

Under Kentucky law, as we have said, this obligation does not exist independently of notice.

 There is yet another reason why this controversy cannot be decided on the basis of a forfeiture for breach of some implied condition or covenant. Since the ground of forfeiture is not found in the terms of the lease, cancellation is not automatic and may be accomplished only through judicial action. Sullivan, Handbook of Oil and Gas Law (1955), section 108 (page 198). On what theory could the original lessor make an ex-parte determination that an implied obligation of the assignee existed, and fix the time when the breach occurred? Even assuming a ground of forfeiture for breach of an implied obligation existed in 1956, the original lessor had no legal authority to declare a part of the lease cancelled, but should have sought such relief by court action. See Gregory v. Sohio Petroleum Co., Ky., 261 S.W.2d 623; Cosden Oil Co. v. Scarborough, 5 Cir., 55 F.2d 634; Berry v. Tide Water Associated Oil Co., 5 Cir., 188 F.2d 820.

Our conclusion on this implied obligation aspect of the controversy is that the failure of the assignee to begin production, without notice and demand by the lessor, did not constitute either a forfeiture or a ground of forfeiture for breach of an implied condition to develop, nor does the complaint show on its face a ground of forfeiture for failure to comply with any other express or implied covenant.

We have not, however, reached the end of this tortuous trail. We think the time has come to face the realities of the situation and to recognize that there are two distinct and different grounds upon which a lessee of an oil and gas lease, or an assignee, may lose his interest. One is by *forfeiture* for breach of an express or an implied covenant or obligation. The other is by *abandonment*. Endless confusion has been caused by the indiscriminate and interchangeable use of the terms "forfeiture" and "abandonment" in a number of cases cited in this opinion. The necessity for accuracy of expression with regard to these two legal concepts is more than a matter of semantics. The two involve distinct and different considerations. Forfeiture and abandonment are not the same thing. See Pohlemann v. Stephens Petroleum Co., D.C., 99 F.Supp. 875; Grubb v. McAfee, 109 Tex. 527, 212 S.W. 464.

With respect to an oil and gas lease, the ground of forfeiture is the breach of an express or implied covenant, condition or obligation of the lease. Sullivan, Handbook of Oil and Gas Law (1955), section 108 (page 198); Stephenson v. Callihan, Tex.Civ.App., 289 S.W. 158; Pohlemann v. Stephens Petroleum Co., D.C., 99 F.Supp. 875. Two of our cases cited earlier in the opinion properly recognized that a breach of implied obligation to further develop constitutes the basis of forfeiture *which may be invoked in an action to cancel the lease.* Johnson v. Dodson, 227 Ky. 132, 12 S.W.2d 310; Leeper Oil Co. v. Rowland, 239 Ky. 295, 39 S.W.2d 486. (As stated in the latter case, forfeiture involves the accrual of a cause of action to cancel.) See also, Cosden Oil Co. v. Scarborough, 5 Cir., 55 F.2d 634.

On the other hand, abandonment is the intentional relinquishment of a known right. 1 Am.Jur., Abandonment, Section 2 (page 2); American Wholesale Corporation v. F. & S. Oil & Gas Co., 242 Ky. 356, 46 S.W.2d 498; Ellis v. Brown, 6 Cir., 177 F.2d 677, 13 A.L.R.2d 945. It is not a ground of forfeiture, but the completed act of abandonment itself terminates the leasehold interest. No court action to cancel is required. See Bay State Petroleum Co. v. Penn Lubricating Co., 121 Ky. 637, 87 S.W. 1102.

Abandonment is a matter of fact. Taylor v. Newman, Ky., 318 S.W.2d 407. Each case depends upon the particular facts or circumstances attendant upon the transaction in question. 1 Am.Jur., Abandonment, Section 12 (page 8). It may be shown by circumstances and conduct. Hails v. Johnson, 204 Ky. 94, 263 S.W. 679; Rice v. Rice, 243 Ky. 837, 50 S.W.2d 26.

A chronic source of difficulty is a finding of an intention to abandon, but this is likewise a question of fact which may be inferred from the acts of the parties. Even though the party against whom abandonment is claimed has denied his intention to abandon, the court has found abandonment. Seaboard Oil Co. v. Commonwealth, 193 Ky. 629, 237 S.W. 48; Hodges v. Mud Branch Oil & Gas Co., 270 Ky. 206, 109 S.W.2d 576.

In Seaboard Oil Co. v. Commonwealth, 193 Ky. 629, 237 S.W. 48, 50, it was said:

"We therefore see that the question of abandonment is one of intention primarily, but the intention to abandon may be gathered from the conduct of the parties, independently of what they may claim was their mental attitude with respect thereto."

See also Justice v. Burgess, 244 Ky. 774, 52 S.W.2d 720.

Mere lapse of time and non-user, unaccompanied by any other evidence showing intention, as a general proposition may not of itself be enough to constitute abandonment. Elk Horn Coal Corp. v. Allen, Ky., 324 S.W.2d 829. However, it has been held that the lapse of a long time after relinquishment of the possession of property is significant evidence of the intention to abandon. Ellis v. McCormack, 309 Ky. 576, 218 S.W.2d 391.

Where there had been production on a subleased part of the leasehold, discontinuance of operations for a period of seven years was held to constitute abandonment. Smyth v. Koplin, Ky., 294 S.W.2d 525.

If we retrace our steps to the cases of American Wholesale Corporation v. F. & S. Oil & Gas Co., 242 Ky. 356, 46 S.W.2d 498, and Tanner v. Reeves, Ky., 249 S.W. 2d 526, upon which lessor so heavily relies, we will find that these were truly abandonment cases, and it was unnecessary to imply a specific obligation and declare a breach of it. We are fortified in this conclusion by two cases involving similar facts, one of which preceded the American and Tanner cases, and one of which followed them. These are Hails v. Johnson, 204 Ky. 94, 263 S.W. 679, and B. & B. Oil Company v. Lane, Ky., 249 S.W.2d 705. Both of these opinions pointed out that *abandonment* was involved, and the latter case construed the American and Tanner cases as having been decided on the principle of abandonment.

This brings us back to the complaint as amended. We have already determined that the allegations of this pleading do not show a breach of an implied obligation justifying forfeiture of the assignee's interest. However, they do raise the issue of abandonment.

The facts alleged are these: The assignee's interest in the 55 acres was acquired in 1939, and in that same year at an expense of approximately $9,000 a well was drilled and no oil was found. We may properly assume that all drilling equipment was removed from these premises. From 1939 until the time the "top" lease was executed (17 years), the assignee made no further attempt to drill on this part of the leasehold nor did he otherwise engage in any activity looking to the development of this land.

In 1956 adjoining land was explored and producing wells were sunk, indicating that the premises in controversy would have been productive if this part of the lease-hold had been developed. While the complaint denies any intention on the part of the assignee to abandon his interest, we think the circumstances overcome this denial.

As pointed out in the recent case of Smyth v. Koplin, Ky., 294 S.W.2d 525, 528:

"* * * each case must be decided according to standards of reasonable behavior under the circumstances."

In view of the nature and purpose of an oil and gas lease and the practical necessities for expeditious development, the fact of abandonment may be more readily found than in other legal relationships. Many cases have recognized it is contrary to the purpose of such a lease that this interest in land be held for an unreasonable length of time simply for speculative purposes. Gregory v. Sohio Petroleum Company, Ky., 261 S.W.2d 623, and cases cited therein. With knowledge of the purpose of such leases, and assignee must realize that an unexplained failure to achieve some commercial development for a long period of time is rather strong evidence he has no intention to do so and consequently has abandoned his interest. This conclusion is further fortified in this case when we consider that drilling was actually undertaken promptly after the assignment, but this proving non-productive, the assignee thereafter made no further effort to discover oil or gas. We are of the opinion that the complaint alleges sufficient controlling facts to show abandonment, except as hereinafter noted.

The amended complaint contains an allegation which may possibly affect the conclusion of abandonment and raises questions of waiver or estoppel. That allegation is that in 1947 E. W. Richmond, who jointly with his wife owned the entire 160 acres subject to lease, advised the assignee (orally and in writing) that he could continue to hold his ownership and possession at least until given notice or demand was

made to do further drilling. We do not know the exact nature of this assurance or the reason for it, or who had notice of it, nor can we determine at this stage its legal effect or whether or not, if binding upon Mr. Richmond, it would be binding upon the defendants in this action. Many questions pertinent to this controversy are raised by this allegation.

As we indicated at the outset of the opinion, this case could not properly be decided on its merits on a motion to dismiss the complaint. Both issues of fact and law are presented by the assignee's pleading which require development by further pleading and perhaps proof.

The complaint invites the issue of abandonment, but also contains allegations tending to impair this defense. For such reason the judgment must be reversed and appellees should be given an opportunity to plead, if they wish to do so, so that the proper issues may be tried by the Chancellor.

The judgment is reversed for proceedings consistent with this opinion.